STATE OF WEST VIRGINIA

*v.*

JOHN WILSON, III

(No. 13337)

Submitted October 2, 1973.        Decided March 5, 1974.

*Franklin D. Cleckley* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *Betty L. Caplan,* Assistant Attorney General, for defendant in error.

CAPLAN, CHIEF JUSTICE:

At the January Term, 1972, of the Circuit Court of Monongalia County, the grand jury thereof returned an

indictment charging the defendant, John Wilson, III, with the crime of possession and delivery of a controlled substance known as heroin. Upon trial, the jury returned a verdict of guilty as charged in the indictment. Thereafter, the defendant moved the court to set aside the jury verdict and grant him a new trial. That motion was denied and on May 8, 1972, the court entered judgment on the verdict, sentencing the defendant to confinement in the state penitentiary for a term of one to fifteen years. Upon the petition of the defendant a writ of error and supersedeas was granted by this Court.

The record reveals that on November 20, 1971, Terry Murray, twenty-two years of age, was in the employ of the City of Morgantown as a special investigator. In this employment it was his duty to investigate the reported sale and use of drugs in that area. Specifically, he was assigned to make purchases of illegal drugs and to report such purchases to the police.

In that capacity, Terry Murray, on November 20, 1971, approached John Wilson, III, at an apartment at 312 Cobun Avenue in Morgantown. Murray testified that shortly after he was admitted to the apartment, the defendant asked him if he wanted to buy some "junk". When he asked the price thereof, the defendant took him into the bedroom and produced four packets of a white powdery substance which he said he would sell for twenty dollars. Murray further testified that he gave the defendant twenty dollars and took the four packets, placing them in his trouser pocket. He said that he later marked each packet, indicating the date of purchase, from whom he made the purchase and the price he paid therefor. He then delivered the packets to Patrolman McCabe, a member of the Morgantown Police Department, who, after placing his identifying marks thereon, turned them over to Trooper J. R. Rogers of the West Virginia Department of Public Safety. For the purpose of obtaining a chemical analysis of the contents of the packets, Trooper Rogers personally delivered them to Sergeant R. S. White,

a chemist for the Criminal Identification Bureau Laboratory in Charleston.

The defendant testified, denying that he made any sale to Terry Murray and affirmatively stating that on November 20, 1971, at the time the sale of heroin was alleged to have been made, he was at his home at 163 Walnut Street in the City of Morgantown.

Subsequently, on December 4, 1971, defendant Wilson and others were placed under arrest, being charged with the sale of a controlled substance, namely, heroin. Upon indictment and arraignment, the defendant, on January 5, 1972, entered a plea of not guilty and a jury trial was set. On January 17, 1972, prior to the trial, the defendant filed numerous motions, all of which were overruled by the court. On January 20, 1972, a jury was impaneled and the trial proceeded to verdict, which, as aforesaid, was returned against the defendant.

One of the principal assignments of error relied upon by the defendant on this appeal is that the court committed reversible error by denying his motion for a change of venue. The law with respect to a change of venue is succinctly stated in Point 2 of the Syllabus of *State v. Wooldridge*, 129 W.Va. 448, 40 S.E.2d 899 (1946), as follows:

> "To warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests upon defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change of venue will be ordered, rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused."

Accord: *State v. Dandy*, 151 W.Va. 547, 153 S.E.2d 507 (1967); *State v. Pietranton*, 140 W.Va. 444, 84 S.E.2d 774

(1954); and *State v. Loveless*, 142 W.Va. 809, 98 S.E.2d 773 (1957).

As provided in Article III, Section 14 of the Constitution of West Virginia, an accused, "for good cause shown", may petition for and obtain a change of venue. Basically, the good cause alluded to in the constitution which the defendant must prove is that he cannot get a fair trial in the county where the offense was alleged to have been committed. Therefore, the underlying consideration is whether the defendant has shown good cause to believe that he could not receive a fair trial in the community where the trial was to be held; and whether, in view of the evidence, the trial court abused its discretion in denying the defendant's motion for a change of venue.

In his motion for a change of venue the defendant asserted that, by reason of "extensive rumor, talk, and newspaper publicity", there was wide-spread hostility and sentiment against him in Monongalia County and that he cannot therefore receive a fair and impartial trial in said county. In support of his motion the defendant called thirteen witnesses and introduced in excess of fifty affidavits. The state did not call any witnesses but did introduce several affidavits in opposition to the motion.

The main thrust of the defendant's evidence reflects the importance attached to the publicity caused by the press conference called by the prosecuting attorney immediately after the arrest of the defendant. In this press conference which was reported by newspapers, radio and television in and around Monongalia County, the prosecutor made several extra-judicial assertions. He strongly indicated that this defendant, among others, was guilty; that, with these arrests, the main suppliers of drugs in the county were captured; and that the value of the narcotics confiscated at the time of the arrests would run into the thousands of dollars. Although these assertions proved to be false, the evidence adduced at the hearing discloses that such widely published statements

made by an officer of the court caused wide-spread prejudice and created an atmosphere in which the holding of a fair trial would be most unlikely. In addition, the state failed to effectively refute the evidence adduced in support of the defendant's motion.

In *Sheppard v. Maxwell*, 384 U.S. 333, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966) the Court strongly indicated and, at least by implication, held that it is the duty of the trial court to control the release of information in relation to a pending case or, if statements appear in the press which would tend to preclude a fair trial, it should grant a change of venue.

In view of the peculiar circumstances of this case, namely, the wide-spread publicity given to the false statements of the prosecuting attorney, an officer of the court, in a press conference called by him, and the failure of the state to materially refute the defendant's contention that he could not receive a fair trial, we are of the opinion that the trial court abused its discretion in denying the motion for change of venue and that such denial constitutes reversible error.

The defendant further complains of the bizarre conduct of the prosecuting attorney during the trial and contends that by reason thereof the court should have granted his motion for a mistrial. The record reveals that during cross examination of a defense witness, the prosecuting attorney asked him if he knew that there was a warrant for his arrest in Preston County charging him with the sale of marijuana. When the witness answered in the negative, the prosecutor said "There is, and you will be arrested when you leave the courtroom." At two other times during this examination before the jury the prosecutor instructed someone, presumably a deputy sheriff, to arrest him.

On another occasion, the prosecuting attorney during cross-examination of a defense witness, called such witness a "liar". Later, upon determining that the witness'

testimony was correct, the prosecutor apologized to the witness and to the court. This nonetheless reflected the unnecessarily belligerent manner in which that court officer handled the prosecution of this case. On rebuttal the prosecutor called a defense witness who had been subpoened but who did not testify. "Why have you not testified for the defense?", queried the prosecution. The witness answered, "I have been arrested and confined in the county jail." This was not relevant to the inquiry and constituted improper rebuttal testimony. Such testimony was of no probative value, its only purpose being to prejudice the jury. Also improper was the testimony elicited from the circuit clerk to the effect that a number of subpoenaed defense witnesses were not called upon to testify.

Numerous other errors were assigned by the defendant on this appeal. An examination thereof reveals that many errors were committed, some of which, considered alone, might not require the reversal of the judgment of the trial court. However, a careful consideration of the entire record clearly demonstrates that the defendant was denied a fair trial as required by the federal and state constitutions. As stated in Point 5 of the Syllabus of *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972): "Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." See also *State v. Harr,* 156 W.Va. 492, 194 S.E.2d 652 (1973).

For the reasons herein stated the judgment of the Circuit Court of Monongalia County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*