298 S.E.2d 898

**STATE of West Virginia**

v.

**Thurman Franklin DYE.**

No. 15244.

Supreme Court of Appeals of
West Virginia.

Dec. 15, 1982.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

Roger L. Thompson, Buckhannon, Robert M. Morris, Weston, for appellant.

PER CURIAM:

Appellant, Thurman Franklin Dye, appeals from a final order of the Circuit Court of Lewis County entering judgment upon the jury's verdict of guilty of armed robbery and sentencing Dye to 25 years imprisonment. He makes several assignments of error, which we have considered carefully and which are discussed herein. None of Dye's assignments persuades us that the trial court's final order must be reversed, and, accordingly, we affirm.

This case is before this Court at the same time as the appeal of Dye's co-indictee, Anthony S. Audia, from his conviction of armed robbery. The indictments arose out of the same facts and involved many of the same witnesses.

It is undisputed that, on April 12, 1979, Dye and Audia were traveling together in a

maroon car which had a damaged body. Debra Buck and Joseph Brown were riding with them. Dye, Audia, and Buck were drinking whiskey during this drive. In the early afternoon of April 12, they stopped at the Post Office in Crawford, Lewis County. There Dye asked Postal Clerk Ernestine Sprigg for directions to a farm which Brown sought to visit.

The group proceeded to Clyde Cowgar's general store which was near the Post Office in Crawford. Audia and Dye entered the store while Buck and Brown remained outside in the car. Clyde Cowgar and Russell and Merle Waugh were present when Audia and Dye entered. The two men purchased a soft drink, obtained change for a five-dollar bill, and left. At trial Dye claimed that due to his ingestion of narcotics and alcohol, he remembered nothing which occurred on April 12 after making these purchases. Clyde Cowgar testified that later in the afternoon of the 12th, Dye, Audia and Buck returned to Cowgar's store in the maroon car. Dye and Audia entered the store while Buck remained outside in the car. Shortly afterward Oscar Galford, a 76-year-old Crawford resident, entered the store. Dye and Audia requested a length of rope which Cowgar cut from a spool. After dawdling about the store for a time and engaging in a whispered conversation with one another, Dye and Audia attacked Cowgar and Galford, knocking the victims to the floor.

While Cowgar lay on the floor, Audia wrapped the length of rope around Cowgar's arms, preventing him from resisting. Dye then demanded Cowgar's money. When Cowgar refused to give it to him, Dye struck him in the head with a soft drink bottle, lacerating the right side of Cowgar's forehead. Cowgar, dazed, felt a hand enter the pocket where he kept his money, and heard Audia ask Dye if he got the money.

Michael A. Curtis was the librarian in charge of a bookmobile parked near Cowgar's store on the afternoon of April 12. Curtis heard Cowgar yelling for help and,

as he left his bookmobile to investigate, he saw the maroon car with Buck inside parked in front of the store. Entering the store, Curtis saw Audia tying up Cowgar. Dye told him that they were drunk and fighting. As Curtis turned to flee, he heard Dye say "get him." Curtis ran from the store.

On the evening of April 12, Dye was arrested at his Harrison County home. He was later indicted, tried, and convicted of armed robbery in the Circuit Court of Lewis County. He seeks a reversal of his conviction on several grounds.

Dye contends that his pretrial line-up was unduly suggestive and was conducted without benefit of counsel. He claims that he was denied his right to a hearing on doctors' reports filed with the court finding him competent to stand trial. He asserts that pervasive pretrial publicity required a change of venue, which was denied. He contends that his discovery was improperly limited in several instances. Dye claims that the photographic array used by the State in identifying him was improper and suggestive and that a photograph of the victim admitted by the trial judge was gruesome and without probative value. Finally, he asserts that a remark made by the trial judge within the hearing of the jury was prejudicial and that in any case it illustrated the judge's settled animus toward Dye, requiring him to recuse himself. We address these assignments in order.

I

Initially we note that Dye contends that his right to due process of law and his right to counsel were denied by the line-up procedure used in this case. The line-up consisted of Dye and three other individuals who were brought to Dye's jail cell and placed inside with him. No counsel was present. Witnesses Merle Waugh and Oscar Galford viewed the subjects and identified Dye as the person they had seen in Crawford on April 12. They subsequently identified Dye at trial.[1]

---

1. We have recently written on the requirements for a proper pretrial line-up in *State v. Gravely,* 171 W.Va. 428, 299 S.E.2d 375 (1982). We held in Syllabus Point 3 of *Gravely:*

Under the circumstances presented herein, we need not address the propriety of the line-up conducted. The line-up was not viewed by the victim of the crime, Clyde Cowgar, who positively identified Dye at trial, nor by Michael Curtis, the bookmobile operator who witnessed the crime and also identified Dye at trial. Debra Buck, who placed Dye and Audia in Cowgar's store at the time of the crime and who corroborated other prosecution witnesses on the circumstances of the pair's arrival and escape did not view the line-up. There was no testimony at trial regarding the line-up itself. Under these circumstances, the admission of the in-court identifications of Dye by Oscar Galford and Merle Waugh who had viewed the allegedly flawed line-up was governed by the standards set forth by this Court in syllabus point 3 of *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976) and quoted in syllabus point 2, *State v. Gravely,* 171 W.Va. 428, 299 S.E.2d 375 (1982):

> In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Herein, both witnesses who identified Dye at trial after having seen the line-up had ample opportunity to observe him independent of the line-up. Oscar Galford observed Dye in Cowgar's store and was at-tacked along with Cowgar by Dye and Audia. Galford never evidenced the slightest doubt of his identification. Merle Waugh observed Dye and Audia through the window of her home, which was adjacent to Cowgar's store. She testified that it was a clear day and that she saw Dye plainly. Considering all the factors set forth in *Casdorph,* we cannot say the trial court erred in admitting the identifications of Dye by Galford and Waugh.

## II

 Dye contends that the trial court erred in denying his motion for a hearing on reports of physicians who examined him at the trial judge's order to determine whether Dye was addicted to drugs. In conjunction with this contention, he argues that he was entitled to a psychiatric examination under *W.Va.Code,* 27–6A–1 [1977]. 27–6A–1(a) provides:

> Whenever a court of record believes that a defendant in a felony case or a defendant in a misdemeanor case in which an indictment has been returned may be incompetent to stand trial or is not criminally responsible by reason of mental illness, mental retardation or addiction, it may at any stage of the proceedings after the return of an indictment or the issuance of a warrant against the defendant, order an examination of such defendant to be conducted by one or more psychiatrists, or a psychiatrist and a psychologist.

The Court indicated that his observations of Dye together with various *pro se* motions and letters Dye filed in this case led him to conclude that there was no doubt as to Dye's competence to stand trial. We cannot say that the trial court abused its discretion in so ruling. *See State v. Demastus,* 169 W.Va. 572, 270 S.E.2d 649 (1980).

The admission at trial of the testimony of a witness that he identified an accused prior to trial at a police initiated line-up or police initiated one-on-one confrontation between the witness and the accused, which pretrial identification procedure was a violation of the accused's right to counsel under the Sixth Amendment to the Constitution of the United States and under art. III, § 14, of the Constitu-tion of West Virginia, constitutes reversible error, unless the admission of such testimony at trial is shown to be harmless constitutional error.

However, in this case no testimony regarding the line-up was introduced at trial. Indeed, two witnesses to the crime who identified Dye at trial never saw the allegedly flawed line-up.

Subsection (d) of 27–6A–1 provides that "after the receipt of the report on the issue of competency," Dye had a reasonable time to request a hearing on the findings therein, which hearing "shall be held by the court of record within ten days of the date such finding or such request has been made." The report filed with the court on March 17, 1980, the day trial began, addressed itself to Dye's physical condition. Dye claims that the denial of his request for a hearing on the report violated his absolute right to a hearing under *W.Va. Code,* 27–6A–1(d) [1977]. However, the report filed was not a psychiatric report and was not ordered under the court's 27–6A–1(a) authority. Hence, the right to a hearing provided in 27–6A–1(d) was inapplicable, and the motion was properly denied.

### III

▪ Dye challenges the trial judge's ruling denying his motion for a change of venue. The court rejected several affidavits offered by Dye through which he sought to show strong hostility and prejudice toward him in the community. The notary public who notarized the affidavits had mistakenly placed his name in the blank left for the affiant's name. The notary's name was then marked through and the affiant's name written above. While the trial court may have erred in excluding these affidavits, any such error is harmless in view of the detailed pretrial inquiry conducted into the publicity surrounding the trial and the extensive individual *voir dire* accorded Dye by the trial judge. Though publicity was extensive and the majority of the jury panel had heard of the case, none had taken enough interest in it to follow it regularly. Only two members of the panel were excused for cause. One of those excused was related to the victim by marriage while the other was a cousin of the county sheriff. A close review of the evidence indicates that the trial court did not abuse its discretion in failing to grant Dye a change of venue.

### IV

▪ Assignments 11, 12 and 13 complain of various limitations placed upon Dye's discovery by the trial court. Dye complains that the trial court erred in denying him police reports and records, a list of all persons known to the State possessing knowledge of the crime, and all statements of prosecution witnesses or memoranda of interviews with those witnesses. Of police reports and records, we noted in *State v. Moran,* 168 W.Va. 688, 285 S.E.2d 450, 453 (1981):

The police report was not discoverable under West Virginia's discovery statute, *W.Va.Code,* 62–1B–2. Under syllabus point 1 of *State v. Dudick,* 158 W.Va. 629, 213 S.E.2d 458 (1975), pre-trial discovery is within the discretion of the trial court, and the defense is generally not entitled to a police report unless it has been used at trial to refresh recollection. Specifically, syllabus point 1 states:

'Subject to certain exceptions, pretrial discovery in a criminal case is within the sound discretion of the trial court; however, after a witness has testified from notes used to refresh his recollection, the defense is absolutely entitled to inspect the notes from which the witness testified and must be given a reasonable opportunity to prepare cross-examination.'

Counsel has not alleged nor does the record reveal that the police report was used by any witness to refresh his recollection. Furthermore, defense counsel makes no attempt to demonstrate prejudice or surprise arising from the denial.

Similarly, in this case there is no indication that the reports sought were used to refresh recollection, nor is any prejudice or surprise at denial of Dye's motion to produce demonstrated.

### V

▪ Turning to Dye's request for the names, telephone numbers, and addresses of all persons known to the prosecution or its investigators having information about the charges against Dye, we note that Dye makes only one argument as to the necessity of this information to his defense. He makes the same argument in support of his

contention that the trial judge erred in failing to order the State to turn over:

[a]ll documents or papers or objects prepared by counsel for the State of West Virginia, or by any other person assisting in the investigation or preparation of this case, which consists of narrative statements of persons, or memoranda of interviews, which material is non-exculpatory to the defendant, obtained by counsel for the State of West Virginia in any manner other than by seizure (1) in the course of the investigation by the grand jury which resulted in the return of the indictment therein; and (2) in the course of the preparations of the trial of this cause on behalf of the State.

The single argument advanced in support of both assignments of error is as follows:

The information requested by the Defendant in the above motions and denied by the trial court, would allow the Defense Counsel to search for potential exculpatory evidence, possibly overlooked or not fully developed by the State. Defense Counsel is in a better position than the State to determine if said matters are exculpatory or might lead to exculpatory evidence.

However, in this case the trial court ordered the prosecution to disclose all exculpatory evidence and a list of the prosecution's witnesses was made available to the defendant. Extensive discovery was permitted. We conclude that the trial court did not abuse its discretion in refusing these requests for discovery.[2]

## VI

■ At the beginning of the fourth day of trial, Sheriff John Rohrbough informed the trial judge that, during the evening recess, Betty Rae Davidson, a juror in the case, received a threatening phone call. It had been ascertained during *voir dire* of Davidson that she had a brother serving a term in the State Penitentiary at Moundsville. The phone call apparently threatened retribution against Davidson's incarcerated brother. During the court's examination of Davidson, the following colloquy was had:

BY THE COURT: What I am asking you is simply this: If that was all that was said in the course of this telephone conversation and assuming you do think it was the wife of the Defendant, who testified in the case, with all of that do you feel that you can serve as a fair, just and impartial juror in this case?

BY THE JUROR: If it going to bring bodily harm to me and my family then I don't want to. [sic] I can't say I could.

BY THE COURT: Well, I assure you it is not going to bring bodily harm to you. Now, with the fact that you received a phone call and assuming you are not going to be bodily harmed can you still serve as a fair, just and impartial juror in this case?

BY THE JUROR: Yes, sir.

BY THE COURT: And you feel you can render a verdict based solely upon the evidence before you and the instructions of the Court upon the law applicable to that evidence?

BY THE JUROR: Yes, sir.

BY THE COURT: As you are under an oath to do so?

BY THE JUROR: Yes, sir.

BY THE COURT: Would the fact you received the phone call in any way prejudice, make you favor one side or the other, in this case? The State of West Virginia or Thurman Franklin Dye?

BY THE JUROR: No, sir.

■ West Virginia has little law on the subject of interference with a juror during trial. Neither party cites any West Virgi-

---

2. Dye contends that the trial judge erred in overruling his "motion to supply by date, hour and individual the total time expended by the various agents or employees of the State of West Virginia in their investigation of this case." Dye claimed to need this information to formulate a motion for a private investigator to assist the defense. However, no motion for such an in-

vestigation was ever made and Dye, therefore, fails to show that he was prejudiced by the trial court's ruling. *State ex rel. Foster v. Luff*, 164 W.Va. 413, 264 S.E.2d 477 (1980), cited by Dye is inapposite. *Foster* established standards for evaluating a motion under *W.Va.Code*, 51–11–8 (1977) for additional expert witness fees.

nia cases dealing specifically with this subject, nor does independent research reveal any such cases. *State v. Williams*, 160 W.Va. 19, 230 S.E.2d 742 (1976) dealt with a somewhat analogous situation. In *Williams* the defendant claimed that the jury had been improperly exposed to a prejudicial article which appeared in the morning newspaper the day of the conviction. There the court set forth the standard for trial judges in determining the possible bias or prejudice of a juror where improper influences are alleged: "The trial court is charged with ascertaining in the first instance whether there is bias or prejudice on the part of a juror and, although the opinion of a juror is entitled to consideration, it should not be taken as conclusive." Syllabus point 5, *State v. Williams*, 160 W.Va. 19, 230 S.E.2d 742 (1976).

We note that in *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) the United States Supreme Court dealt with the question of the remedy for alleged juror partiality. Therein, Phillips contended that his murder convictions should be vacated on the ground that a juror in his case applied for a position as an investigator with the District Attorney's office which was prosecuting Phillips during the trial of his case. The Second Circuit Court of Appeals agreed and reversed Phillips' conviction. The Supreme Court, Justice Rehnquist writing, disapproved any presumption of prejudice on the facts presented:

> He [Phillips] contends that a court cannot possibly ascertain the impartiality of a juror by relying solely upon the testimony of the juror in question. Given the human propensity for self-justification, respondent argues, the law must impute bias to jurors in Smith's position. We disagree.
>
> This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias.

The Court cites *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), for the proposition that a hearing with all interested parties to determine the prejudicial impact of the improper influence on the juror or jurors satisfies the Due Process Clause of the Fourteenth Amendment. The Court went on to note in footnote 7 of the majority opinion in *Smith v. Phillips:*

> Respondent correctly notes that determinations made in *Remmer* type hearings will frequently turn upon testimony of the juror in question, but errs in contending that such evidence is inherently suspect. As we said in *Dennis v. United States* [339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734] ... '[o]ne may not know or altogether understand the imponderables which cause one to think what he thinks, but surely one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter.' 339 U.S. at 171, 70 S.Ct. at 523. See also *United States v. Reid*, 12 How. 361, 366, 13 L.Ed. 1023 (1851).

*Smith v. Phillips*, 455 U.S. at 217, 102 S.Ct. at 946. *Smith v. Phillips* is criticized by one commentator as misrepresenting the United States Supreme Court's previous decisions in *Remmer* and for largely ignoring its previous misconduct cases. Note, 62 B.U.L.Rev. 361 (1982).

We hold that, under the standard established in syllabus point 5 of *State v. Williams*, *supra*, the trial court did not abuse its discretion in ruling that juror Davidson was not biased or prejudiced against Dye by the phone call.

## VII

■ A photograph of the victim, Clyde Cowgar, was introduced into evidence. Dye argues that the photograph was gruesome and calculated to inflame the jury and that it lacked any substantial probative value. The photograph showed Cowgar's head with the wound inflicted by Dye when he struck Cowgar with a glass bottle.

■ We set forth the rule regarding the admissibility of photographs challenged on this ground in Syllabus point 3 of *State v. Reed*, 166 W.Va. 558, 276 S.E.2d 313 (1979):

> To be admissible, photographs must be offered for some relevant purpose and

must have probative value which outweighs any prejudicial effect; however, admission of a photograph is a matter largely within the discretion of a trial court and will not be reversed absent a clear showing of abuse of that discretion.

We cannot say that the trial court clearly abused its discretion in admitting the photograph of Cowgar.

In addition to the line-up, the State used a photographic array to identify Dye prior to trial. Dye contends, as one of his principal assignments of error, that the array was unduly suggestive. He enumerates several features in the photograph of him which were not found in the other photographs. This Court discussed photographic arrays in *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981). In syllabus point 4 of *Harless* we held that "[a] pretrial identification by photograph will be set aside if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

Upon a close examination of the photographs included in the array, we conclude that the trial court was correct in ruling that they were not impermissibly suggestive.

### VIII

█ Finally, Dye contends that the trial judge made a remark that he had "never seen a trial so difficult to proceed" within the hearing of the jury, which remark was prejudicial to his defense since the delay which occasioned it was caused by defense counsel's request for an opportunity to make a motion *in camera*. The judge denied that the remark was made within the hearing of the jury. While it is certainly true that a circuit judge in West Virginia is held to a strict standard of impartiality, *see State v. McGee*, 160 W.Va. 1, 230 S.E.2d 832, 835, 836 (1976), we find nothing in the

alleged remark requiring reversal under the circumstances of this case.[3]

Affirmed.

---

**3.** Three times prior to trial Dye moved the trial judge to recuse himself and his refusal to do so was three times upheld by this Court. Our reading of the record reveals nothing which would compel us to rule that the trial judge should have recused himself, and, accordingly, Dye's assignment of error 6 alleging error in the trial judge's failure to recuse himself is without merit.