339 S.E.2d 213

**STATE of West Virginia**

v.

**George E. BENNETT.**

**No. 16360.**

Supreme Court of Appeals of
West Virginia.

Submitted April 30, 1985.

Decided July 10, 1985.

Rehearing Denied Sept. 12, 1985.

John G. Ours, Petersburg, for appellant.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

This action is before this Court upon an appeal by George E. Bennett from his October, 1983 conviction in the Circuit Court of Grant County, West Virginia, of murder of the first degree. *W. Va. Code*, 61–2–1 [1931]. The jury returned its verdict without a recommendation of mercy, and the circuit court sentenced the appellant to the West Virginia Penitentiary "for the rest of his natural life." The State asserted at trial that the appellant murdered his wife, Debra Bennett, by means of strangulation. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

## I

The appellant and Debra Bennett lived in a mobile home near Petersburg in Grant County. During the night of March 11, 1983, and early morning hours of March 12, 1983, an argument occurred between the appellant and Debra Bennett, during which Debra stated that she wanted a divorce, and the appellant threatened to commit suicide. Later, on March 12 at 1:15 p.m. a Grant County ambulance squad, called by the appellant, arrived at the home. Debra Bennett was found dead in the home with a pair of panty hose tied tightly around her neck. Her body also exhibited a head wound and various other wounds. The cause of death was subsequently determined to be "asphyxia due to ligature strangulation."[1]

At 1:45 p.m. on March 12, officers of the West Virginia Department of Public Safety arrived at the home. Upon learning that the appellant had been arguing with his wife, the officers informed the appellant of his rights [*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] and transported him to the Grant County Courthouse.

The appellant and the officers arrived at the courthouse at approximately 3:00 p.m., and the appellant was again informed of his rights. From 3:00 p.m. until 4:26 p.m. the appellant was "intermittently questioned" about the death of Debra Bennett. During that time, the appellant made vari-

---

1. Dr. Francis Green, who performed an autopsy upon the body of Debra Bennett, testified at trial that:

    the pathological findings were those of multiple traumatic injuries to the scalp, face and the upper arms, lower arms and evidence of asphyxiation due to a ligature strangulation.

    . . . .

    The cause of death was asphyxiation that was, in layman's terms, that was obstruction to the airways, such that there was, she wasn't able to get enough oxygen to maintain vital systems.

    [trial transcript at 114]

ous oral inculpatory statements to the officers.[2]

From 4:26 p.m. until 5:03 p.m. on March 12 the appellant formally confessed to the officers that he killed Debra Bennett. That confession was tape recorded and reduced to writing.

Subsequently, the appellant was taken to the office of Grant County Magistrate Ruth Michael for presentment. During that presentment, the appellant was placed under arrest.

## II

The appellant was indicted during the March 1983 term of the Circuit Court of Grant County.

In May 1983, the appellant, by counsel, filed discovery motions by way of which the appellant sought from the State information concerning, *inter alia*, (1) the manner in which the homicide was committed, (2) any oral or written statements given by the appellant to law enforcement officers and (3) a list of persons possessing knowledge of the "facts and circumstances" of the homicide. *See W.Va.R.Crim.P.* 16. The circuit court ordered the State to comply with those discovery motions.

Following a pretrial *in camera* hearing, the circuit court denied the appellant's motion for a change of venue and the appellant's motion to suppress the written confession. In addition, the circuit court ruled, over the objection of the appellant, that certain photographs of the body of Debra Bennett, which were taken in the mobile home, would be admissible at trial.

During the trial the State was permitted, through its witnesses, to inform the jury of both the oral inculpatory statements of the appellant[3] and the confession of the appellant which had been reduced to writing. The tape recording of the latter confession was played to the jury, over the objection of the appellant. Furthermore, the State was permitted to suggest that the appellant struck his wife with a metal club immediately before she was strangled.

The appellant asserted, at trial, the defense of alibi, i.e., that he was not at home at the time of the homicide. Moreover, various witnesses, including the mother of Debra Bennett, testified that the appellant was a "nonviolent" person. Finally, the appellant indicated that his inculpatory statements and confession were involuntary. Dr. Hiram Sizemore, Jr., who examined the appellant in June 1983, described for the jury his conclusion that the appellant was upset, confused and "extremely suggestible" at the time the appellant talked to the officers on March 12.

## III

The appellant contends that the circuit court committed error in permitting the State to introduce at trial the appellant's oral inculpatory statements (hereinafter the "oral confession") and the appellant's confession which was tape recorded and reduced to writing (hereinafter the "written confession"). The appellant's oral and written confessions were made at the

---

2. During the pretrial *in camera* hearing concerning the appellant's *written* confession, the nature of the appellant's *oral* statements was revealed. Trooper J.A. Humphrey testified:

Q. What did you learn during that hour and a half plus interview or interrogation, whatever you want to call it, before you went to get that tape, that made you go get the tape?
A. Okay, we'd already read him his rights, you know. And he indicated that he had had a fight with her that lasted about all night. He said it started about 10:00 the prior evening. And he admitted then, before it was ever taken on tape or anything, verbally, that he had knocked her down and choked her and tied her up, which was all done verbally before it was ever taken down.

[hearing July 6, 1983 at 63–64]

3. Consistent with his pretrial testimony, Trooper Humphrey testified at trial:

THE COURT: You're reporting the oral comments he made the first time he started talking about this case, is that right?
THE WITNESS: Yes, sir.
MR. OURS: Your Honor, I want to object....
....
A. So, he hit her and knocked her down and then he stated immediately he just tied her up at that time. It was words to that effect. He tied her up.

[trial transcript at 48–49]

Grant County Courthouse on March 12, subsequent to the discovery of the body of Debra Bennett.

There is no question that the appellant's oral confession, given sometime between 3:00 p.m. and 4:26 p.m., seriously incriminated him in the death of Debra Bennett. The appellant told the officers that he "knocked her down and choked her and tied her up...." *See* n. 2 and n. 3, *supra.* That oral confession was revealed to the jury through the testimony of Trooper Humphrey.

The record indicates that the question of the voluntariness of the appellant's oral confession was never resolved by the circuit court. No *in camera* hearing with respect to the oral confession was ever held.

■ In syllabus point 5 of *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980), this Court held:

Where there is a failure to hold an *in camera* hearing on the defendant's inculpatory statements, we recognize under *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), that the case will not be reversed for a new trial on this basis alone. Instead, it will be remanded for a voluntariness hearing before the trial court. If the trial court finds the statements are voluntary the verdict will stand. If, on the other hand, he finds the statements to be involuntary, the verdict will be set aside unless the trial court determines that this constitutional error is harmless beyond a reasonable doubt.

*See also State v. Persinger,* 169 W.Va. 121, 286 S.E.2d 261, 266 (1982); *State v. Wimer,* 168 W.Va. 417, 284 S.E.2d 890, 893 (1981); *State ex rel. White v. Mohn,* 168 W.Va. 211, 283 S.E.2d 914, 916 (1981).

■ Thus, inasmuch as in this action there was a failure to hold an *in camera* hearing upon the appellant's oral confession, this action must be remanded to the circuit court, pursuant to *State v. Clawson,* for a "voluntariness hearing" upon that oral confession.

■ We further conclude that the circuit court committed error in admitting the appellant's written confession into evidence. As Rule 5 of the West Virginia Rules of Criminal Procedure provides in part: "An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person *without unnecessary delay* before a magistrate within the county where the arrest is made." (emphasis added). *See also W.Va.Code,* 62–1–5 [1965].

■ In syllabus point 6 of *State v. Persinger, supra,* we held: "The delay in taking the defendant to a magistrate may be a critical factor where it appears that the primary purpose of the delay was to obtain a confession from the defendant." Furthermore, we observed in *Persinger* that "the focus is not so much on the length of the detention but whether the police were primarily using the delay in bringing the defendant before a magistrate to obtain a confession from him." 169 W.Va. at 136, 286 S.E.2d at 270.

In this action, the record indicates that shortly after the discovery of the body of Debra Bennett, the officers contacted Magistrate Ruth Michael and informed her that her services would be needed. The office of Magistrate Michael was located in the Grant County Courthouse "across the hall" from the room in which the appellant was questioned by the officers. The magistrate arrived at the courthouse at approximately 3:20 p.m. on March 12, prior to the taking of the appellant's written confession. Trooper Humphrey testified:

Q. * * * You had an oral confession but not a written one [between 3:00 P.M. and 4:26 P.M.], is that correct?

A. That's correct, sir.

Q. And you didn't take [the appellant] to the magistrate, so, I presume that that means that you wanted to get the written confession before you took him before the magistrate, is that a fair statement?

A. That is a fair statement.

[hearing July 6, 1983 at 66]

In *State v. Mitter,* 169 W.Va. 652, 289 S.E.2d 457 (1982), the defendant, implicated

in a homicide, gave a confession which contained statements in conflict with the police investigation. The police then detained the defendant, prior to presentment before a magistrate, for the purpose of obtaining a second confession. Holding that the trial judge committed error in admitting the second confession into evidence, we stated: "A magistrate was available at the time and had been alerted that his services would be required. Under these facts the delay in taking the defendant before a magistrate after the first confession was so unjustifiable and unreasonable as to render the second written statement inadmissible." 169 W.Va. at 659, 289 S.E.2d at 462.

In this action, we conclude that the officers acted improperly, under the circumstances, in failing to present the appellant to Magistrate Michael until after the officers obtained the appellant's written confession. We can reach no other result. The delay was not merely for the purpose of transcribing a confession. Rather, the record indicates that the officers delayed presentment for the purpose of obtaining a separate confession. The circuit court committed error in admitting that confession into evidence.[4] *See* syl. pt. 1, *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984); *State v. Mays*, 172 W.Va. 486, 307 S.E.2d 655, 658 (1983); syl. pt. 1, *State v.*

**4.** In holding that the appellant's written confession was inadmissible at trial, we do not reach the issues raised by the appellant concerning the propriety of allowing the jury to hear a tape recorded version of that confession.

We note, however, that the tape of the appellant's confession was "skipping" as it was played to the jury during the State's case-in-chief. As Trooper Humphrey testified at trial upon cross-examination:

Q. There is something wrong with [the] machine, isn't there?

A. Might be something wrong with the tape now after I've been carrying it around in that envelope for several months.

Q. Do you think that tape is defective now?

A. It's still the same tape that we used on that night.

Q. But, your comment was that it doesn't sound the same as it did before.

A. No, it's not as cleared up.

Q. Then you admit that it skipped on several occasions, that it was repeating itself?

A. Yes, sir. It was.

*Mason*, 162 W.Va. 297, 249 S.E.2d 793 (1978).

Finally, this Court is concerned with the issue of whether the appellant waived his right to counsel prior to making the confessions to the officers on March 12. Although we have stated that the appellant's written confession was inadmissible because of the improper delay in presenting the appellant to Magistrate Michael, the waiver of counsel issue must be resolved with regard to the appellant's oral confession.

It is undisputed that on March 12 the officers made several attempts by telephone to contact the appellant's attorney. Those attempts were unsuccessful. The officers testified, however, that those calls (and the appellant's request for counsel) were made *after* the appellant had made his oral and written confessions.

Nevertheless, this Court has carefully examined the record, particularly the transcript of the pretrial hearing held on August 2, 1983, and is of the opinion that a serious question exists as to whether the appellant requested counsel, if at all, before the making of his written confession, before or during the taking of his oral confession, or after both confessions were made. As Corporal Charles R. Burner testified:

Q. And it was, the sound was getting so low in some places that you couldn't hear it. It was up and down, up and down, is that correct?

A. That's correct.

[trial transcript at 66–67]

That testimony should be viewed in light of *State v. Harris*, 169 W.Va. 150, 286 S.E.2d 251 (1982), where, in syllabus point 3, we held:

The general rule is that tape recorded inculpatory statements may be admitted into evidence and played to the jury, if they meet the following criteria: (1) A showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3) an establishment of the authenticity and correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) an identification of the speakers; and (7) a showing that the testimony was voluntarily made without any kind of inducement.

Q. When Mr. Frye went to get it [the tape recording device]? So, you tried to call me [defense counsel] during the interrogation before the tape process. Is that correct?

A. No. It was afterwards. When George requested, when they told me that George requested an attorney and wanted Attorney Ours, then that's when I attempted to call you.

Q. All right. And then the—

A. At your office and at your residence.

Q. O.K. But the tape on the Prosecutor's stenograph machine or Dictaphone had not been done at that time?

A. I don't really know. I don't know.

[hearing August 2, 1983 at 15–16]

Furthermore, the record contains a form dated March 12 upon which the appellant checked the section stating "I have counsel to represent me." Even assuming that the appellant executed that form before Magistrate Michael, a question remains as to when the appellant sought and obtained counsel.

■ We held in syllabus point 1 of *State v. McNeal,* 162 W.Va. 550, 251 S.E.2d 484 (1978):

Once a suspect in custody has expressed his clear, unequivocal desire to be represented by counsel, the police must deal with him as if he is thus represented. Thereafter, it is improper for the police to initiate any communication with the suspect other than through his legal representative, even for the limited purpose of seeking to persuade him to reconsider his decision on the presence of counsel.

*See also State v. Wyer,* 173 W.Va. 720 at 730, n. 21, 320 S.E.2d 92 at 102, n. 21 (1984); syl. pt. 1, *State v. Green,* 172 W.Va. 727, 310 S.E.2d 488 (1983); syl. pt. 1, *State v. Easter,* 172 W.Va. 338, 305 S.E.2d 294 (1983); syl. pt. 1, *State v. Louk,* 171 W.Va. 639, 301 S.E.2d 596 (1983); *State v. Goodman,* 170 W.Va. 123, 290 S.E.2d 260, 266 (1981); syl. pt. 4, *State v. Persinger, supra;* syl., *State v. Sowards,* 167 W.Va. 896, 280 S.E.2d 721 (1981); syl. pt. 1, *State v.*

*Clawson, supra; State ex rel. Burton v. Whyte,* 163 W.Va. 276, 281, 256 S.E.2d 424, 427 (1979).

■ This action must, therefore, be remanded to the circuit court for a determination of whether the appellant waived his right to counsel prior to making the oral confession to the officers on March 12, 1983.

IV

The appellant further contends that he was unduly prejudiced at trial because of an alleged failure by the State to comply with court ordered pretrial discovery.

In May 1983, the appellant filed discovery motions by way of which the appellant sought from the State information concerning, *inter alia,* the manner in which the homicide was committed and a list of persons possessing knowledge of the facts and circumstances of the homicide. The circuit court ordered the State to comply with those discovery motions.

Subsequently, in July 1983, the State became aware of the existence of a metal club allegedly used during the course of the homicide of Debra Bennett. On October 3, 1983, more than two months later and two days prior to trial, the State informed defense counsel of the existence of the club. Furthermore, it was not until the trial had begun that the State revealed to defense counsel the names of four witnesses (Jon A. Kobert, Robin L. Kobert, Jackie Crites and Frank Miller) who could connect the metal club to the homicide.

Jon A. Kobert and Robin L. Kobert testified at trial that the metal club was seen in the Bennett home prior to the death of Debra Bennett. Frank Miller testified at trial that the appellant was seen near a creek in "Powers Hollow" on the day of the homicide, and Jackie Crites testified at trial that the metal club was later found abandoned in that creek.

The metal club and the above testimony thus permitted the State to suggest to the jury that the appellant struck Debra Bennett with the club and then, after the alleged strangulation, attempted to conceal

the club in the creek at Powers Hollow. Such evidence is consistent with the testimony of Dr. Francis Green, called as a witness for the State, who, upon being shown the metal club at trial, testified that the club could have produced the head injury that Debra Bennett sustained immediately prior to strangulation.

■ Although we acknowledge that during the trial the circuit court conducted *in camera* hearings concerning the metal club and the testimony of the above-named witnesses, by way of which hearings defense counsel obtained some measure of information concerning the previously undisclosed evidence, we hold that the State failed to comply with the requirements of Rule 16 of the West Virginia Rules of Criminal Procedure and that, consequently, the appellant was unduly prejudiced at trial.

Rule 16 provides that, upon the request of a defendant, the State shall permit the defendant to inspect, *inter alia*, "tangible objects, ... which are within the possession, custody and control of the state, and which are material to the preparation of his defense or are intended for use by the state as evidence in chief at the trial, or where obtained from or belonging to the defendant." In addition, that rule provides that, upon the request of a defendant, "the state shall furnish to the defendant a written list of names and addresses of all state witnesses whom the attorney for the state intends to call in the presentation of the case in chief...."

Clearly, the metal club and the identity of the four witnesses constituted information "subject to disclosure" under Rule 16. That rule further provides:

(c) *Continuing Duty to Disclose.* If, prior to or during trial, a party discovers additional evidence or material previously requested or ordered, which is subject to discovery or inspection under this rule, he shall *promptly* notify the other party or his attorney or the court of the existence of the additional evidence or material.

(d) *Regulation of Discovery....*

(2) Failure to Comply with a Request.—If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

(emphasis added)

■ This Court recognized in syllabus point 8 of *State v. Audia,* 171 W.Va. 568, 301 S.E.2d 199, *cert. denied,* 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983), that "[s]ubject to certain exceptions,[5] pretrial discovery in a criminal case is within the sound discretion of the trial court." *See also* syl. pt. 7, *State v. Gum,* 172 W.Va. 534, 309 S.E.2d 32 (1983); *State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600, 606 (1983); *State v. Dye,* 171 W.Va. 361, 298 S.E.2d 898, 903 (1982); syl. pt. 1, *State v. Moran,* 168 W.Va. 688, 285 S.E.2d 450 (1981).

■ However, in syllabus point 2 of *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980), we held:

When a trial court grants a pretrial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the prepa-

5. In *State v. Ashcraft,* 172 W.Va. 640, 309 S.E.2d 600 (1983), this Court stated that "[t]he exceptions include the duty of the prosecution to divulge any matter which is obviously exculpa- tory in nature, or which may be relevant and favorable to the defendant ... and the right of the defense to inspect notes used by a prosecution witness to refresh recollection." (citations

ration and presentation of the defendant's case.[6]

In this action, we hold that where a defendant charged with murder of the first degree filed discovery motions seeking information concerning the manner in which the homicide was committed and a list of persons possessing knowledge of the facts and circumstances of the homicide, and the motions were granted by the trial court, the defendant was entitled to a new trial where (1) the State, two days before trial, informed defense counsel of the existence of a weapon used in the commission of the homicide, which weapon the State had knowledge of in excess of two months before trial, (2) the State, during the trial, revealed to defense counsel the names of four witnesses who could connect the weapon to both the homicide and the defendant and (3) *in camera* hearings conducted during the trial with regard to such previously undisclosed evidence failed to overcome the undue prejudice suffered by the defendant at trial because of the non-disclosure. *W.Va.R.Crim.P.* 16.

omitted) 172 W.Va. at 646, n. 4, 309 S.E.2d at 606, n. 4.

6. *State v. Grimm* was decided by this Court prior to October 1, 1981, the effective date of the West Virginia Rules of Criminal Procedure. However, since the effective date of those rules, we have had occasion to cite the syllabus point of *State v. Grimm* set forth above. *See State v. Simmons,* 172 W.Va. 590, 309 S.E.2d 89 (1983), 172 W.Va. at 595 n. 5, 309 S.E. at 94, n. 5; *State v. Meadows,* 172 W.Va. 247, 304 S.E.2d 831 (1983), 172 W.Va. at 254, 304 S.E.2d at 838–39; syl. pt. 5, *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982).

7. The petition contains additional assignments of error which, upon an examination of the record, do not warrant reversal of the appellant's conviction of murder of the first degree.

The appellant contends that he was unduly prejudiced by the admission at trial of several photographs of his deceased wife. The photographs were taken at the appellant's trailer, and the trial court determined that the photographs were gruesome. Those photographs were properly admitted, however, in view of our holding in *State v. Rowe,* 163 W.Va. 593, 259 S.E.2d 26 (1979). Syllabus point 1 of that case states:

> Gruesome photographs are not *per se* inadmissible, but they must have something more than probative value, because by the preliminary finding that they are gruesome, they are presumed to have a prejudicial and inflammatory effect on a jury against a defendant. The State must show that they are of essential evidentiary value to its case.

The circumstances of this action clearly demonstrate that the appellant was "surprised on a material issue" within the meaning of *State v. Grimm.* The State had knowledge of the metal club in excess of two months prior to trial but did not so inform the appellant about the club until shortly before the trial. The State waited even longer to disclose to the appellant the identity of the four witnesses. That the club and the previously undisclosed witnesses constituted a significant factor in the State's case is illustrated by the following remarks of the State made during closing argument: "[The metal club] didn't get in that creek by accident. That's the design, the covering up, the working of a cruel, malicious, vicious killer trying to cover up what he had done."

▮▮▮▮ The admission at trial of the undisclosed evidence violated the rights of the appellant under Rule 16 of the West Virginia Rules of Criminal Procedure. *See* annot., 34 A.L.R.2d 16 (1970).[7]

In this action, the trial judge determined that the photographs were of essential evidentiary value to the State. *See* syl. pt. 6, *State v. Young,* 173 W.Va. 1, 311 S.E.2d 118 (1983); syl., *State v. Wilson,* 172 W.Va. 724, 310 S.E.2d 486 (1983); syl. pt. 7, *State v. Audia,* 171 W.Va. 568, 301 S.E.2d 199 (1983), *cert. denied,* 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983); syl. pt. 5, *State v. Mullins,* 171 W.Va. 542, 301 S.E.2d 173 (1982); syl. pt. 6, *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982); syl. pt. 2, *State v. Clark,* 170 W.Va. 224, 292 S.E.2d 643 (1982); *State v. Church,* 168 W.Va. 408, 284 S.E.2d 897, 901 (1981); syl. pt. 2, *State v. Headley,* 168 W.Va. 138, 282 S.E.2d 872 (1981); *State v. Haddox,* 166 W.Va. 630, 276 S.E.2d 788, 791 (1981); syl., *State v. Saunders,* 166 W.Va. 500, 275 S.E.2d 920 (1981); syl. pt. 6, *State v. Clawson,* 165 W.Va. 588, 270 S.E.2d 659 (1980).

The appellant contends that the trial court committed error in refusing to grant the appellant's motion for a change of venue. The appellant asserted that widespread publicity adverse to the appellant existed in Grant County prior to trial and that, in spite of a careful jury selection process, several individuals, who had previously discussed the appellant's case with others or read about the case in a newspaper, became members of the jury. We have carefully examined the record in this case, however, and conclude that the appellant failed to carry his burden of showing good cause for a change of venue. In that regard, we note that the record fails to demonstrate the level of pretrial publicity which, in *State v. Sette,* 161 W.Va. 384, 242 S.E.2d 464 (1978), we held required a change of

Upon all of the above, the final order of the Circuit Court of Grant County is hereby reversed, and the appellant's conviction of murder of the first degree is set aside. This action is remanded to the circuit court for proceedings consistent with the principles of this opinion.

Reversed and remanded.

venue. *See W.Va.R.Crim.P.* 21; *W.Va.Code*, 62–3–13 [1931]; syl. pt. 2, *State v. McFarland*, 175 W.Va. 205, 332 S.E.2d 217 (1985); syl. pt. 2, *State v. Young, supra;* syl. pt. 1, *State v. Zaccagnini*, 172 W.Va. 491, 308 S.E.2d 131 (1983); syl. pt. 1, *State v. Williams*, 172 W.Va. 295, 305 S.E.2d 251 (1983); syl. pts. 3 and 4, *State v. Hall*, 171 W.Va. 212, 298 S.E.2d 246 (1982); syl. pts. 1 and 2, *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1982); syl. pt. 1, *Keys v. Hey*, 164 W.Va. 132, 260 S.E.2d 837 (1979); syl. pt. 1, *State v. Wilson*, 157 W.Va. 566, 202 S.E.2d 828 (1974); syl. pts. 1 and 2, *State v. Dandy*, 151 W.Va. 547, 153 S.E.2d 507 (1967); syl. pts. 1 and 2, *State v. Hamric*, 151 W.Va. 1, 151 S.E.2d 252 (1966); *State v. Loveless*, 140 W.Va. 875, 880–81, 87 S.E.2d 273, 277 (1955); syl. pt. 2, *State v. Wooldridge*, 129 W.Va. 448, 40 S.E.2d 899 (1946).

Finally, the appellant contends that the indictment was insufficient to charge him with the offense of murder of the first degree. However, the language of the indictment follows the form "Indictment for Murder in the First Degree" found in the Appendix of Forms attached to the West Virginia Rules of Criminal Procedure. Furthermore, the indictment substantially follows the language of this State's murder statute, *W.Va.Code*, 61–2–1 [1931]. The contention of the appellant is, therefore, without merit. *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43, 48–49 (1983). *Cf., W.Va.Code*, 62–9–3 [1931].

All other issues raised by the appellant are without merit.