511 S.E.2d 124

**STATE of West Virginia, Appellee,**

v.

**Rufus GARRETT, Jr., Appellant.**

**No. 24997.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1998.

Decided Dec. 8, 1998.

Robert E. Wilkinson, Esq., Chief Public Defender, Huntington, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Allen H. Loughry II, Esq., Assistant Attorney General, Attorneys for Appellee.

**PER CURIAM:**

This is an appeal from the August 21, 1997, final order of the Circuit Court of Cabell County sentencing the Appellant, Rufus Garrett, Jr., to a term of one to fifteen years, as well as fining the Appellant $1,000,[1] as a result his July 25, 1997, jury conviction for one count of delivering a controlled substance, specifically crack cocaine. The Appellant alleges the trial court committed the following errors: 1) admitted improper character evidence; 2) refused to allow the defense to inspect the photo albums[2] used to identify the Appellant; and 3) refused to admit a transcript of the preliminary hearing in magistrate court. Having reviewed the record, the parties' briefs and arguments, as well as all other matters submitted before this Court, we conclude that the trial court erred in refusing to allow the defense to inspect the photo albums used to identify the Appellant and, therefore, we reverse and remand the case to the lower court.[3]

## I.

During the early morning hours of October 24, 1996, Officers Randy Wiles and Tim Goheen of the Huntington Police Department were working in an undercover capacity making drug purchases. Officer Wiles, acting as

---

1. The Appellant was also assessed $50 in court costs.

2. Actually there were three photo albums that the officer went through in searching for the Appellant's picture according to Officer Wiles' testimony.

3. We have thoroughly reviewed the other two assignments of errors raised by the Appellant and find them to be without merit.

a passenger in a yellow cab driven by Officer Goheen, went to an area of known drug activity in Huntington, West Virginia.

A subject that Officer Goheen had previously known as Bill Walker flagged down the cab and asked if they "were looking." Officer Wiles replied that he was looking for a "[f]ifty." [4] Next, Bill Walker motioned Officer Wiles out of the cab and told him to wait in a walkway between two buildings.

A second individual, later identified by Officer Wiles and Officer Goheen as the Appellant, came out of a nearby bar. The Appellant asked the officers in a very excited way, "[w]ho's looking?" The Appellant was holding two pieces of a white substance in his hand. Officer Wiles handed the Appellant fifty dollars and in return, was given a substance later identified as "crack" cocaine.[5] The officer then returned to the cab.

Officer Goheen also testified that he watched the Appellant come out of the bar and walked over to Officer Wiles. He stated that he then witnessed an exchange between the two from a distance of ten to twelve feet. He stated that he kept the windows of his vehicle down and kept the vehicle positioned so he could maintain visual contact with Officer Wiles.

After the drug purchase, the officers left the area in order to get more manpower to make the arrest. When the officers returned to the area to arrest the suspect, however, they could not find him. The officers took the evidence back to police headquarters and properly secured it.

The Appellant relied upon an alibi defense. It is clear from the cross-examination of the

officers, that the officers' identification of the Appellant was a critical aspect of the defense. Consequently, on cross-examination, Officer Wiles' stated [6] that he did not know the Appellant personally, but that he did recognize him immediately while looking through the photographs in the photo albums. The officer stated that there were many, many blacks contained in the photo albums, some of whom were bald like the Appellant. He stated that Officer Goheen knew the Appellant to be "Spoony's Brother" and that Officer Goheen told him that he had had contact with the Appellant on the street about two weeks prior to the drug purchase. Specifically, Officer Wiles stated that "[h]e [Officer Goheen] had contact with Mr. Rufus Garrett, but he didn't remember the individual."

It was after Officer Wiles testified that the Appellant's attorney requested that the Appellee produce the photo albums. The trial court first stated for the officer to bring them over, but then changed its ruling when the prosecutor stated that "[t]hese are internal photographs used in investigations" and that "[i]t would be a terrible burden on the Police Department to have that exposed." The trial court, again without examining the albums, found that the officer had an "independent recollection" of the defendant and that "he could have identified the defendant without looking at the photographs, maybe to tie in a name but not as far as identification of the defendant is concerned." Finally, the trial court stated that "there is sensitive information [7] in there." Thus, the trial court ruled that the Appellee did not have to produce the photograph albums.[8]

---

4. Officer Goheen referred to a "[f]ifty" as a "[f]ifty [d]ollar rock of 'crack' cocaine."

5. Officer Wiles testified that this transaction occurred in a well-lighted area, with nothing obstructing his view of the Appellant. Officer Goheen also testified that he had a clear, unobstructed view of the Appellant during the transaction.

6. Prior to Officer Wiles' testimony, the lower court determined that no in camera hearing was necessary on the identification issue. The lower court's reasoning for not conducting an in camera hearing appears to be the fact that Officer Goheen stated that he knew the individual.

7. The "sensitive information" alluded to by the trial court was described by Officer Wiles as "[s]ome of the[ ] individuals in this book are maybe not criminals here and we have taken them for future reference."

8. At the end of the trial, the trial court allowed the Appellant to recall Officer Wiles to the stand as a witness. Ironically, during the examination of the officer by the Appellee, the trial court allowed the Appellee, over the Appellant's objection, to place a single photo from the photo albums in evidence as an exhibit. Once again, the Appellant's attorney was never given the opportunity to examine even the single photo prior to this time.

Officer Goheen then testified that he knew the Appellant and his last name "from a conversation I had previously with him and his brother [9] several weeks prior to that." The officer stated that he had gone to school with the Appellant's brother, Spoony. The officer state that he got the Appellant's first name from a photo album the Drug and Vice Unit keeps of "past offenders." The officer also testified that he was "pretty sure of what his first name was and his last name," but he wanted to confirm it. He indicated that he was eighty percent sure that the suspect was the Appellant. On cross-examination the officer testified that "I knew absolutely who he was." He also stated that if he had not had access to the photo albums, he would have come up with the Appellant's name on his own.

Vanessa Hughes, who was the Appellant's girlfriend at the time of the drug transaction, testified on the Appellant's behalf. Ms. Hughes testified that the Appellant was living with her and spent the night with her on the night the drug transaction occurred. She testified that she was working as a bartender on the night in question and the Appellant left the bar with her.

## II.

■ The first issue is whether the trial court improperly refused to allow the Appellant to examine the photo albums used by the police to identify him. Relying on Rule 16 of the West Virginia Rules of Criminal Procedure,[10] the Appellant asserts that the trial court's refusal to allow the defense to inspect the photo albums used to identify him seriously impaired the ability of the defense to effectively present its case and was an abuse of the trial court's discretion. In contrast, the Appellee asserts that the trial court did not abuse its discretion in its refusal to allow

the Appellant to examine the albums, because the use of the photo albums by the police did not constitute a lineup. The Appellee maintains that prior offender photo albums were utilized independently of the officers' identification of the Appellant as a means to insure the accuracy of the arrest warrant. Further, the Appellee contends that the photo albums were not relevant to the Appellant's case.

■ We begin our discussion of the issue presented by noting that "[s]ubject to certain exceptions, pretrial discovery in a criminal case is within the sound discretion of the trial court." Syl. Pt. 8, *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199, *cert. denied*, 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983); *accord* Syl. Pt. 4, *State v. Bennett*, 176 W.Va. 1, 339 S.E.2d 213 (1985). Consequently, we must determine whether the lower court abused its discretion by refusing to allow the Appellant to examine the photo albums used to identify him.

For general purposes, Professor Cleckley defines a "photographic display" as "the most common identification procedure used." I Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* 523 (2d ed.1993). Further, all that this procedure entails is "the showing of pictures to the witness to determine whether he can identify the criminal." *Id.*

■ In *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978), this Court stated in syllabus point seven that "[a] defendant must be allowed to examine any photographic display used by the government during pre-trial identification procedures, to determine whether it improperly suggested his identity." In that case, we concluded that the "defendant's protest that the refusal of the

---

9. The defense indicated that the Appellant had several brothers and that the brothers all looked alike. Further, at one point, Officer Goheen testified that it was the Appellant's brother, James, that he had seen just weeks prior to Appellant's arrest. Officer Goheen later corrected the name and said that it was Michael Garrett whom he knew to be Spoony. The defense presented evidence that James Garrett was in the custody of the Department of Corrections at the time of the alleged sighting. The parole officer who testified also stated that James' nickname

was Spoony. The officer later acknowledged that he had mistakenly thought Michael Garrett was nicknamed Spoony.

10. The pertinent portion of Rule 16 provides that "upon request of the defendant, the state shall permit the defendant to inspect ... photographs... which are material to the preparation of the defense ...." W. Va. R.Crim. P. 16(a)(1)(C).

trial court to allow him to examine the book of photographs, denied him the right to effectively cross-examine the officer on the procedure used, is valid." *Id.* at 544, 244 S.E.2d at 235.

In the present matter, upon review of the testimony, it is evident from Officer Wiles' testimony that he used the pictures in the photo albums to identify the suspect from whom he had purchased crack cocaine. The officer specifically testified that prior to using the photo albums, he did not have personal knowledge of the suspect's identity. It was after Officer Wiles' testimony that the Appellant requested a copy of the photo albums the officer had used to make his identification of the Appellant. According to this Court's decision in *Pratt*, the Appellant was entitled to the photo albums, because the albums were "used by the government during pre-trial identification procedures...."[11] *See* Syl. Pt. 7, in part, 161 W.Va. at 531, 244 S.E.2d at 228. The important fact is that as long as the photo albums were used in identifying the Appellant prior to trial, the albums must be produced for the Appellant's examination so that he can adequately prepare a defense and cross-examination.

### III.

Finally, as an ancillary matter, our decision in *State v. Dudick*, 158 W.Va. 629, 213 S.E.2d 458 (1975), is instructive with regard to the Appellee's argument that the trial court properly denied the Appellant an opportunity to examine the photo albums because the albums contain "sensitive information." In *Dudick*, this Court was presented with the issue of whether the defense was entitled to notes that a police officer used to refresh his memory during his testimony. We held that the defense must be given an opportunity to examine the notes and to prepare cross-examination. *See id.* at 630, 213 S.E.2d at 460, Syl. Pt. 5.

More importantly, however, in *Dudick*, this Court addressed the procedure to be utilized when the police report contained additional information that was requested to be pro-

duced which was not the subject of direct examination. *Id.* at 638, 213 S.E.2d at 464. This Court recommended that

> [w]hen a police report encompasses additional information which is not the subject of direct examination, the defense is entitled to inspect it as well, *unless the judge determines in an in camera proceeding that the material is in no way relevant to the defendant's case and disclosure of the material (for example, the names of confidential informants) would endanger police activities in the future.*

*Id.* (Emphasis added.)

Similarly, in the instant case, if the Appellee can demonstrate to the judge in an in camera proceeding that the photo albums at issue contain additional information, such as whether the photograph is of someone who was not arrested and/or has no police record, which is "in no way relevant to the defendant's case" and that the disclosure of the information "would endanger police activities in the future," then the trial court, in its discretion, can excise the pertinent information. *See id.* The Appellant, however, is absolutely entitled to examine the "photographic display" itself, because the officer testified that he used it during pre-trial identification procedures to identify the Appellant. *See* Syl. Pt. 7, *Pratt*, in part, 161 W.Va. at 531, 244 S.E.2d at 228.

### IV.

Based upon the forgoing, the decision of the Circuit Court of Cabell County is hereby reversed and remanded to the circuit court for a new trial consistent with this decision.

Reversed and Remanded.

Justice McGRAW did not participate in the decision of this case.

---

11. Our decision in no way implies that the pretrial identification used impermissibly tainted the officers' in-court identification of the Appellant.

*See* Syl. Pt. 4, *State v. Stacy*, 181 W.Va. 736, 384 S.E.2d 347 (1989).