PD-0484-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/15/2015 2:48:45 PM
Accepted 6/19/2015 10:28:30 AM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

## NO. PD-0484-15
## ALBERT RODRIGUEZ MEDELLIN, Petitioner

## V.

## THE STATE OF TEXAS, Respondent

---

## ON PETITION FOR DISCRETIONARY REVIEW OF THE FOLLOWING:

## IN THE COURT OF APPEALS
## FOR THE 13TH DISTRICT
## NO. 13-13-00190-CR
## ON DIRECT APPEAL FROM
## COMAL COUNTY, TEXAS

## TRIAL COURT CASE NO. CR-2011-196
## Honorable Carl E. Stewart, Chief Judge Presiding

---

FILED IN
COURT OF CRIMINAL APPEALS

June 19, 2015

ABEL ACOSTA, CLERK

Larry Warner,
Counsel for Petitioner
Alberto Rodriguez Medellin
3109 Banyan Circle
Harlingen, Texas 78550
Phone: (956) 230-0361
Facsimile: 1-866-408-1968
office@larrywarner.com
Texas Bar#20871500;USDC,SDTX 1230;
Board Certified, Criminal Law, Texas Board
of Legal Specialization(1983)
Member of the Bar of the Supreme Court of
the United States (1984)

Pursuant to *TEX.R.APP.P.68.4,Appellant provides the following identity of parties and counsel:*

## Identity of parties and counsel

Alberto Rodriguez Medellin, Appellant

FOR THE STATE OF TEXAS at trial and on appeal and on petition for discretionary review:

Ms. Jennifer C. Smith \*\*\* and \*\*\*

Ms. Laura B. Bates COMAL COUNTY DISTRICT ATTORNEY'S OFFICE 150 North Seguin, Suite 307 New Braunfels, Texas 78130 (830) 221-1300

FOR THE DEFENDANT ALBERT RODRIGUEZ MEDELLIN at trial:
Thomas P. 'Tom' Clark ATTORNEY AT LAW 800 West San Antonio Street, Suite B New Braunfels, Texas 78130 (830) 624-0804

FOR THE DEFENDANT ALBERT RODRIGUEZ MEDELLIN On Appeal and on petition for discretionary review:

Larry Warner,
Counsel for Petitioner
Alberto Rodriguez Medellin
3109 Banyan Circle
Harlingen,Tx 78550
Phone: (956) 230-0361
Facsimile: 1-866-408-1968
office@larrywarner.com
Texas Bar#20871500;USDC,SDTX
1230; Board Certified, Criminal Law,
Texas Board of Legal
Specialization(1983)
Member of the Bar of the Supreme
Court of the United States (1984)

Pursuant to TEX.R.APP.P.68.4(a), Petitioner provides this Table of Contents with reference to the pages of the Petition, indicating the subject of each ground or question presented for review.

**TABLE OF CONTENTS**                                    PAGE

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement re oral argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

Statement of the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Statement of procedural history . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

Grounds for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

1. The Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States.

The question is: Does the Trial Court abuse its discretion in denying a change of venue when the evidence is otherwise in equipoise but the District Attorney herself announces publicly pretrial her personal opinion that the defendant is guilty? Does the district attorney's publicized opinion fulfill the prejudice requirement of TEX.CODE CRIM.P.art.31.02(a)?

The decision of the Court of Criminal Appeals is **Ransonnette v. State**,522S.W.2d509(Tex.Crim.App.1975)

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12

Prayer for Relief......................... 16

Appendix .................................. 21

Pursuant to TEX.R.APP.P.68.4(b), Petitioner provides an Index of Authorities, arranged alphabetically and indicating the pages of the petition where the authorities are cited.

## INDEX OF AUTHORITIES

**CASES:**                                                                    **PAGES**

**Ransonnette v. State**,522S.W.2d509(Tex.Crim.App.1975)

**McCutcheon v. State,**363 S.W.2d 457 (Tex.Crim.App. 1962)

> Refusal of defendant's motion for change of venue on ground that publicity given by radio, television and newspapers of district attorney's announcement that defendant was one of 12 persons he most wanted to convict and send to penitentiary deprived defendant of fair and impartial trial was not error in absence of showing that any prejudice found its way into jury box.

Pursuant to TEX.R.APP.P. 68.4©, Petitioner includes a short statement of why oral argument would be helpful.

## Statement re Oral Argument

Oral argument would be helpful to the decisional process. The Court and Counsel could discuss the correct standard of review of the decision to deny a motion for change of venue.

Most recently, the Court of Criminal Appeals stated:

"Indeed, even extensive knowledge of the case or defendant in the community as a result of pretrial publicity is not sufficient if there is not also some showing of prejudicial or inflammatory coverage.8" **Gonzalez v. State**,222 S.W.3d446,449hn2(Tex.Crim.App.2007) regresar

Earlier, the Court of Criminal Appeals had set a more exacting standard:

"Refusal of defendant's motion for change of venue on ground that publicity given by radio, television and newspapers of district attorney's announcement that defendant was one of 12 persons he most wanted to convict and send to penitentiary deprived defendant of fair and impartial trial was not error in absence of showing that any prejudice found its way into jury box. **McCutcheon v. State,**363 S.W.2d 457 (Tex.Crim.App. 1962).

The Court and Counsel could discuss whether the Court of Appeals correctly interpreted the standard set out by the Court of Criminal Appeals in **Ransonnette v. State**,522S.W.2d509(Tex.Crim.App.1975) The Court of Appeals did not review the prejudice from the publication of the District Attorney's opinion that the defendant was guilty.

Considering evolving standards of due process and due course, as well as promulgation of higher standards of conduct and more precise rules of professional conduct, the Court of Criminal Appeals and Counsel could discuss whether it is time to revisit a half-century old opinion on the subject of the prosecutor's public expression of opinion on the defendant's guilt. See: **McCutcheon v. State,**363 S.W.2d 457 (Tex.Crim.App. 1962)

> Refusal of defendant's motion for change of venue on ground that publicity given by radio, television and newspapers of district attorney's announcement that defendant was one of 12 persons he most wanted to convict and send to penitentiary deprived defendant of fair and impartial trial was not error in absence of showing that any prejudice found its way into jury box. **McCutcheon v. State,**363 S.W.2d 457 (Tex.Crim.App. 1962)

Pursuant to TEX.R.APP.P.68.4(d), Petitioner provides a statement of the case, noting briefly the nature of the case, and reserving the details of the case for statement with the pertinent grounds or questions.

### Statement of the case

The nature of the case was a prosecution of Petitioner for murder.

Petitioner pleaded not guilty and tried guilt/innocence to a jury.

The jury found him guilty of murder.

The jury recommended and the judge imposed a sentence of life imprisonment.

Petitioner timely filed a Notice of Appeal to the Court of Appeals for the Third District of Texas. The Supreme Court of Texas transferred the matter to the Court of Appeals for the Thirteenth District of Texas.

A Panel of the Court of Appeals for the Thirteenth District of Texas affirmed the judgment of conviction and sentence imposed.

Petitioner sought and obtained an extension and then timely filed Motions for Rehearing and Rehearing En Banc. The Court of Appeals overruled both Motions on

May 14, 2015. (Before Petitioner filed timely motions for rehearing and rehearing en banc, Petitioner sought from the Court of and obtained from the Court of Criminal Appeals a thirty-day extension to file this Petition until June 3, 2015.)

Petitioner timely presents this Petition for Discretionary Review.

Pursuant to TEX.R.APP.P.68.4(e), Petitioner provides a Statement of Procedural History.

**Statement of the Procedural History of the Case**

The court of appeals is the Court of Appeals for the Thirteenth District of Texas. (The matter was appealed to the Court of Appeals for the Third District of Texas. The Supreme Court of Texas transferred the matter to the Court of Appeals for the Thirteenth District of Texas.)

Re: TEX.R.APP.P.10.5(b)(3)(B), the date of Court of Appeals' judgment is April 2, 2015.

Re: TEX.R.APP.P.10.5(b)(3)© the case number in the Court of Appeals is "NUMBER 13–13–00190–CR".

Re: TEX.R.APP.P.10.5(b)(3) (D), the date every motion for rehearing or en banc reconsideration was filed:

On May 1, 2015, Petitioner filed a Motion for Extension of Time to file the Motion for Rehearing and to file the Motion for Rehearing En Banc. Those Motions

for Rehearing were due on May 4, 2015. Petitioner asked till June 3, 2015 to file those Motions for Rehearing.

An extension was granted until June 3, 2015. The Court of Appeals overruled both motions on May 14, 2015. However, on May 4, 2015, Petitioner filed both Motions for Rehearing and Motion for Rehearing En Banc. The 30th day after May 14, 2015 is Saturday, June 13, 2015. So, the Petition for Discretionary Review is due on Monday, June 15, 2015.

This Petition is filed by sending it electronically to the Clerk of the Court of Appeals to the following address:

Clerk, Court of Appeals for the Thirteenth District of Texas, 5th Floor, Hidalgo County Administration Building, 100 East Cano Street, Edinburg, Texas.

Pursuant to TEX.R.APP.P.68.4(f), Petitioner states briefly, without argument, the questions presented for review, expressed in the terms and circumstances of the case, but without unnecessary detail.

**GROUNDS FOR REVIEW**

Grounds for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

1. The Court of Appeals has decided an important question of state or federal law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals or the Supreme Court of the United States.

The question is: Does the Trial Court abuse its discretion in denying a change of venue when the evidence is otherwise in equipoise but the District Attorney herself announces publicly pretrial her personal opinion that the defendant is guilty.

The decision of the Court of Criminal Appeals is **Ransonnette v. State**,522S.W.2d509(Tex.Crim.App.1975)

The Court of Appeals did not apply the standard correctly because it did not consider the extreme prejudice of the district attorney's having publicly expressed to the small-town newspaper her personal opinion that the defendant was guilty. The District Attorney charged Petitioner with causing his wife's death and then told the media, "he caused her death".

Pursuant to TEX.R.APP.P.68.4(g), Petitioner provides a direct and concise argument, with supporting authorities, amplifying the reasons for granting review.

**ARGUMENT**

The question is: Does the Trial Court abuse its discretion in denying a change of venue when the evidence is otherwise in equipoise but the District Attorney herself announces publicly pretrial her personal opinion that the defendant is guilty.

The decision of the Court of Criminal Appeals are **Ransonnette v. State**,522S.W.2d509(Tex.Crim.App.1975) In **Ransonnette** the Court of Criminal Appeals determined that the trial court did not abuse its discretion in denying a change

of venue when the trial court was presented with an evenly divided choice of witnesses and evidence regarding whether the defendant could receive a fair trial.

The Court of Appeals treated the record as if it were like the record in **Ransonnette**...evenly divided. But the record was not evenly divided. The record showed that the District Attorney herself expressed to the one newspaper in this county of five-thousand subscribers her personal opinion that Petitioner was guilty. Here the prosecutor expressed her personal opinion to the media that the defendant was guilty.

> "Jennifer Smith, stated that: We don't know the final
> mechanism of death, but I want it to be clear that she died as
> a result of Albert Medellin." (RR 2 40)

Another decision of the Court of Criminal Appeals is **Williams v. State**,170 S.W.2d 482(Tex.Crim.App.1943). "The venue of this case should have been changed." **Williams v. State**,170 S.W.2d 482(Tex.Crim.App.1943)

The question is important to the jurisprudence of the state because the District Attorney is prohibited from expressing such opinion.

> "(b) A lawyer ordinarily will violate paragraph (a), and the
> likelihood of a violation increases if the adjudication is on-
> going or imminent, by making an extrajudicial statement of
> the type referred to in that paragraph when the statement refers
> to:***(4) any opinion as to the guilt or innocence of a defendant

or suspect in a criminal case or proceeding that could result in incarceration;" Tx Disc.R.Prof.Conduct§3.07

The analysis of the Court of Appeals in relying on **Gonzalez, Montanez, De Blanc, and Salazar** is flawed precisely because none of those cases involved a public and publicized opinion by the very District Attorney who was to prosecute the defendant that he was guilty.

In **Gonzalez**, "local newscasts aired the surveillance tape depicting the murder of the convenience store clerk." **Gonzalez v. State**,222 S.W.3d446,447(Tex.Crim.App.2007) There is nothing in **Gonzalez** from which the public might conclude that the person who was to prosecute the case might have or did have important evidence about the case supporting her/his opinion that the defendant was guilty. The Court of Appeals' reliance on **Gonzalez** was misplaced.

In **Salazar**,

> "The trial court admitted several newspaper stories and tran-
> scripts of television news coverage concerning appellant's
> case and the similar cases underway at the time." **Salazar v.
> State**,38SW3d141,150hn13(Tex.Crim.App.2001)

Nor was there anything in Salazar about the district attorney saying in the media that the defendant was guilty. In Medellin the district attorney told the newspaper that Medellin caused the death of Medellin's wife, exactly what Medellin was charged with.

**Montanez** deals with presumed findings of fact. It was a matter involving a motion to suppress. **Montanez v. State**,195 S.W.3d101,106hn4(Tex.Crim.App.2006) Montanez does not treat venue.

In **DeBlanc**, the appellant's own evidence on publicity was weak and conflicting and the state put on twenty-five witnesses who said the murder defendant could get a fair trial in Liberty County. **DeBlanc v. State**,799SW2d701,704hn2(Tex.Crim.App.1990)

Nor was there anything in **DeBlanc** about the district attorney saying in the media that the defendant was guilty. In **Medellin** the district attorney told the newspaper that Medellin caused the death of his wife, exactly what he was charged with.

## McCutcheon distinguished

This is not an appeal and Petitioner is not trying to treat this process as if it were one seeking a writ of error. The Court of Appeals simply did not apply the standard correctly because it did not examine the prejudice adequately.

**Ryser, infra,** relies on **Mendez**, another half-century old decision adopted before the 1965 Code of Criminal Procedure, before present rules of professional conduct were in effect, and before American Bar Association Standards for a Fair Trial and a Free Press were published.

In **Mendez:**

> "District Attorney Briscoe 'has been reported by Television
> and Radio news reporters and by all of the three Houston news-
> papers both by story and photographs that Guadalupe Morales
> Mendez was a person charged with an offense in Harris County
> and was one of twelve he most wanted to convict and most wanted
> to see in the penitentiary..........'"

**Mendez v. State**,362SW2d841,842hn2(Tex.Crim.App.1962)

The Court of Criminal Appeals did not reach the venue matter in **Mendez**

because trial counsel had not reserved an exception, another ancient practice no longer

used. **Mendez v. State**,362SW2d841,843hn3(Tex.Crim.App.1962)

**The Court of Appeals did not consider the**

**"nature of the publicity".** *Gonzalez* at 451hn7

The Court of Criminal Appeals set out the test for whether pretrial publicity was

prejudicial:

> "In examining whether the pretrial publicity is prejudicial and
> inflammatory, a trial court may take three matters into consider-
> ation: 1) the nature of the publicity, 2) any evidence presented at
> a change of venue hearing, and 3) testimony received from venire
> members at voir dire.17" **Gonzalez** at 451hn7

The Court of Appeals did not consider the "nature of the publicity", namely that

the District Attorney told the small-town's only newspaper that the defendant

caused his wife's death, that he was guilty.

In **Gonzalez** the Court of Criminal Appeals noted that it had only reversed for

the trial court's failure to grant a change of venue onetime, in Jack Ruby's case, Rubenstein v. State, 407 S.W.2d 793 (Tex. Crim. App. 1966)

In **Gonzalez**, the Criminal Appeals said that showing a video of the crime was "not sufficient to place beyond the zone of reasonable disagreement the trial court's decision to deny appellant's motion." **Gonzalez** at 451 hn8

In Medellin, the Court of Criminal Appeals should clarify the standard in the light of **Rubenstein**; it should hold that the District Attorney's publicizing of her opinion that Petitioner "caused the death of his wife" after the very same District Attorney had *charged* that Petitioner "caused the death of [his wife]" was indeed sufficient to place beyond the zone of reasonable disagreement the trial court's decision to deny appellant's motion."

**Other jurisdictions' treatment of prosecutor's pretrial statements re defendant's guilt.** The Court of Criminal Appeals may consider the opinions of other jurisdictions . " Numerous decisions of other appellate courts, including Texas courts of appeals and courts of other jurisdictions, are in accord with our holdings ...."**Lawrence v. State** ,240 S.W.3d 912,917 hn12 fn24(2007)

Those opinions about the prosecutor's pretrial statements about the defendant's guilt are gathered at "Pretrial Publicity in Criminal Case as Ground for Change of Venue" 33 A.L.R.3d 17.

"Prosecuting attorney-

newspaper under control of § 27[a]

participation in release of publicity §§ 20, 27[a],

32[a], 40, 46 television appearances by § 32[a]"

When the *judge* said in a letter that defense counsel knew the defendant was guilty in a murder case, the judge was disqualified. His letter was publicized in the small-town newspaper. Even though there was a new judge, the trial was deemed unfair because of the comment by a trial official on the defendant's guilt. **People v. McKay**,236 P2d145(Cal.1951)

Where the newspaper coverage went beyond objective dissemination of information by reporting of extrajudicial statements by prosecutors, the trial judge abused his discretion in denying a change of venue and the Supreme Court of Montana granted a peremptory writ. **State ex rel. Coburn v Bennett**,655 P2d 502(Mont.1982)

It was reversible error to refuse change of venue for defendant accused of trafficking in heroin where prosecutor, at press conference immediately after defendant's arrest, stated that defendant was guilty. **State v Wilson** (W Va) 202 SE2d 828 (W. Va.)

"In this press conference which was reported by newspapers, radio and television in and around Monongalia County, the prosecutor made several extra-judicial assertions. He strongly indicated that this defendant, among others, was guilty. "**State v Wilson**, 202 SE2d 828 (W. Va.1973)

The Court in Wilson found prosecutorial misconduct and cumulative error and ordered a new trial.

The Court of Appeals in Medellin misconstrued the standard of review on denial of a motion for change of venue. The Court of Criminal Appeals should grant this petition for discretionary review, allow full briefing, and order a new trial.

**The Court of Appeals in Medellin misapplied the test for prejudice in discounting the fact that there was only one newspaper in the county.**

In **Coburn**, there was only one newspaper in the county. The "Independent Record, the only daily newspaper in Lewis and Clark County." The population of Lewis and Clark Co. In 1982 was about 52,000. (Google, "population Lewis and Clark County, accessed 06/11/15). Comal County had about 100,000 at the time of trial (Google, "population Lewis and Clark County, accessed 06/11/15).

In **Coburn**, the prosecutors intimated their opinion of the strength of their evidence:

> ""County Attorney Charles Graveley was shaking his head in wonder.
> " 'When you read her statement,' he said of Thursday's 11-year-old rape victim, 'you'd think she was 28 or 29, and well-educated at that.
> " 'It's the best statement from a rape victim I have seen in five years,' he said.
> "Assistant County Attorney Steve Garrison had another way of putting it this morning.
> " 'He picked the wrong little girl,' he said. 'She's the kind that when you say, "describe the vehicle," she just does it.'" **Coburn** at 503 [internal quotations
> unchanged,lw]
> The County Attorney also said: "Graveley said it was his opinion that $100,000 bail to keep Coburn in jail to protect the community was legally proper." **Coburn** at 504
> " 'Once he's found insane, he virtually has a license to commit another crime and another crime and not go to prison,' Graveley said." **Coburn** at 504

The prosecutor in Coburn plainly told the only newspaper in the county that he thought the defendant was guilty.

> "County Attorney Graveley was campaigning for reelection during the pendency of the Coburn case. The Independent Record ran a "Candidates Say"" 'The bail in serious crimes must be set sufficiently high to insure that the defendant is *not going to commit any more crimes* against our citizens while awaiting trial on the former charge.' " (Emphasis supplied.)" [Court supplied emphasis,lw]

The Court condemned the prosecutor's statements in Coburn:

> "County Attorney Graveley's campaign statement that bail should
> insure that "the defendant is not going to commit any more crimes"
> shows a total disregard for the fundamental constitutional
> protection embraced by the concept of presumed innocence,
> and under the circumstances implies that relator is guilty."
> **Coburn** at 507hn5

Although not in the record, in deciding whether to grant this petition for discretionary review, the Court of Criminal Appeals may note that the prosecutor in Medellin was running for election after Medellin was arrested in 2010. She was sworn in January of 2011. Medellin was indicted in April of 2011.

In Medellin, the District Attorney's comments were even more explicit than those in Coburn. The District Attorney charged that Medellin caused the death of his wife and then told the county newspaper that "he caused the death of his wife". The Court of Appeals misapplied the standard when it discounted the District Attorney's comment.

In applying the standard, the Court of Appeals did not consider the effect of there being one newspaper in the County. The evidence showed that Comal had 100,000 people and that 5,000 subscribed to the newspaper, the only newspaper.

The Court of Appeals should have considered the prejudicial effect of publishing the prosecutor's opinion that the Petitioner "caused his wife's death".

"While the exact figures of the number of people who saw the telecast were in doubt, the court stated that there could be no doubt that it was a very large number and that the potential for influence on possible talesmen was significant, and that the effect of the telecast could only be prejudicial." **People v Martin** (1963) 19 App Div 2d 804, 243 NYS2d 343

**The Court of Appeals misapplied the standard by treating Harris County and Comal County as if they were the same for purposes of publicity.**

**The population of the county matters when considering prejudice and change of venue.**

The Court of Appeals relied on **Ryser v. State**,453 SW3d 17,37(Tex.App.–Houston[1st Dist]2014,pet.ref'd) **Ryser** dealt with a news conference involving the mayor, a state representative, and the district attorney. The opinion in **Ryser** does not cite any statement or opinion from the district attorney. The Court of Appeals considered the size (population) of Harris County in deciding that prejudice was not proven. The Court of Appeals in **Ryser** also noted that there was a video of the crime.**Ryser v. State**,453 SW3d 17,37(Tex.App.–Houston[1st Dist]2014,pet.ref'd)

The Thirteenth Court of Appeals' reliance on **Ryser** was misplaced. Harris has almost thirty-six times more population that Comal. Harris has "population, 2014 estimate 4,441,370". http://quickfacts.census.gov/qfd/states/48/48201.html accessed May 25, 2015) Comal has "population,2014 estimate123,694".(http://quickfacts.census.gov/qfd/states/48/48091.html accessed May 25, 2015)

The Court of Criminal Appeals will please take judicial notice of those statistics from the United States Census Bureau. TEX.R.EVID.201(d)

The case against Medellin was circumstantial; there was no statement from the defendant and there were no eyewitnesses.

## CONCLUSION

The Court of Criminal Appeals should grant this petition and allow full briefing.

**In the Court of Criminal Appeals of Texas**
**No.  PD-0484-15**
**On Petition for Discretionary Review of the following:**
**CAUSE NO 03-13-00190-CR**
**IN THE COURT OF APPEALS**
**FOR THIRTEENTH JUDICIAL DISTRICT**

**ALBERTO RODRIGUEZ MEDELLIN, PETITIONER**
**V. THE STATE OF TEXAS**
**ON APPEAL FROM COMAL COUNTY, TX**

**TRIAL COURT CAUSE NO. CR-2011-196**

**<u>CERTIFICATE OF SERVICE</u>**

A copy of the Petition for Discretionary Review has been forwarded as indicated below, to which this certificate is attached, to:

Honorable Jennifer Tharp, Criminal District Attorney of Comal County, Texas 150 North Seguin Avenue, Suite 307, New Braunfels, Texas 78130 Fax: 830-620-5599 and Email:contact7@co.comal.tx.us
Hon. Laura Burton Bates, Assistant Criminal District Attorney, 150 N. Seguin Ave., Suite 307, New Braunfels, TX 78130 Fax: 830-620-5599 and Email:contact7@co.comal.tx.us
Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 12405, Austin, TX 78711
I emailed and faxed it on May 4, 2015   Fax  512-463-5724 and Regular US Mail.

Law Office of Larry Warner
Respectfully submitted

June 15, 2015
By:*/S/ LARRY WARNER*
Larry Warner


**In the Court of Criminal Appeals of Texas**
**No._ PD-0484-15**
**On Petition for Discretionary Review of the following:**
**CAUSE NO 03-13-00190-CR**
**IN THE COURT OF APPEALS**
**FOR THIRTEENTH JUDICIAL DISTRICT**


**ALBERTO RODRIGUEZ MEDELLIN, PETITIONER**
**V. THE STATE OF TEXAS**
**ON APPEAL FROM COMAL COUNTY, TX**


**TRIAL COURT CAUSE NO. CR-2011-196**


I, the undersigned counsel, certify that this Petition for Discretionary Review was prepared using WordPerfect X3 and complies with TexR.App.Proc. 9.4 and contains 4,040 words.

Law Office of Larry Warner
Respectfully submitted
June 15, 2015
By:*/S/ LARRY WARNER*
Larry Warner


APPENDIX


Order

A copy of the letter Denying the Motions for Rehearing  and Appellat's motion for Rehearing en Banc is attached.   In a Petition for Discretionary Review, the Court of Criminal Appeals of Texas may take judicial notice of documents in the lower court in the same case.

> An "appellate court may take judicial notice of its own records in the same or related proceedings involving same or nearly same parties, 1. Huffman v. State, 479 S.W.2d 62, 68 (Tex.Cr.App.1972); Ex parte Flores, 537 S.W.2d 458 (Tex.Cr.App.1978)" Turner v. State,733 S.W.2d 218,223 hn1(Tex.Crim.App.1987

The website of the THIRTEENTH Court of Appeals notes:
"05/14/15 Motion for  rehearing DENIED Appellant
05/14/15 Motion for rehearing En Banc DENIED Appellant
Event Type: Motions DENIED
Description: Appellant
Date: 05/14/15
Disposition: Motions DENIED
Opinion Written:"



# NUMBER 13-13-00190-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **ALBERT RODRIGUEZ MEDELLIN,** | **Appellant,** |
| | **v.** |
| **THE STATE OF TEXAS,** | **Appellee.** |

### On appeal from the 207th District Court
### of Comal County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant Albert Rodriguez Medellin was indicted for murder and aggravated assault of a member of his household in connection with the death of his girlfriend, Antonia Espinoza. *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 22.02(a)(2), (b)(1) (West, Westlaw

through 2013 3d C.S.).[1]  The indictment alleged that Medellin caused Espinoza's death by striking her with his fists and committed aggravated assault by causing Espinoza serious injury with a deadly weapon, his hands.  The indictment also alleged two prior convictions, one for bail jumping and one for burglary of a non-habitation.  The jury convicted Medellin of both offenses and sentenced him to ninety-nine years' incarceration for the murder charge and fifty years' incarceration for the aggravated assault charge.

On appeal, Medellin challenges both convictions.  By seventeen issues, Medellin argues that:  the trial court erred in refusing to grant a change of venue; the evidence was insufficient to support the jury's murder verdict; the jury charge contained an erroneous instruction; certain comments by the prosecutor during the case and closing argument were improper; the trial court erred in admitting expert and lay testimony about the deceased's wounds and cause of death; the trial court erred in admitting, during the punishment phase, certain evidence of Medellin's prior offenses and failing to question the jury about those offenses; defense counsel was ineffective; and cumulative error deprived Medellin of a fair trial.  We affirm.[2]

## I.  Venue[3]

By his first issue, Medellin argues that the trial court abused its discretion in overruling his motion for a change of venue.  Medellin argues that the publicity of his

---

[1] Medellin was also indicted for injury to a disabled individual, but the State did not pursue that charge at trial.  See TEX. PENAL CODE ANN. § 22.04(a)(1) (West, Westlaw through 2013 3d C.S.).

[2] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this appeal has been transferred to this Court from the Third Court of Appeals in Austin, Texas.  See TEX. GOV'T. CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it.  See TEX. R. APP. P. 47.4.

case in Comal County, a "small county with only one newspaper," was "pervasive and prejudicial." More specifically, Medellin argues that his chance of a fair trial in Comal County was prejudiced by the district attorney talking to the media about what she perceived as Medellin's guilt.

A change in venue may be granted on a criminal defendant's motion if supported by the defendant's affidavit and the affidavits of two other credible residents of the county if, within the county, there is either (1) "so great a prejudice against [the defendant] that he cannot obtain a fair and impartial trial," or (2) "a dangerous combination against [the defendant] instigated by influential persons, by reason of which he cannot expect a fair trial."[4] Tex. Code Crim. Proc. Ann. art. 31.03(a) (West, Westlaw through 2013 3d C.S.). Medellin's motion sought a change of venue under the first justification—that such a prejudice against him existed in Comal County that he could not obtain a fair and impartial trial.

To justify a change of venue based on public attention sparked by media, a defendant must show that the "publicity was pervasive, prejudicial, and inflammatory." *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007); *Salazar v. State*, 38 S.W.3d 141, 150 (Tex. Crim. App. 2001). "The mere existence of media attention or publicity is not enough, by itself, to merit a change of venue." *Gonzalez*, 222 S.W.3d at 449. Even extensive knowledge of the case in the community is not sufficient if there is not a showing of prejudicial or inflammatory coverage. *Id.* The defendant "bears a

---

[4] We note that Medellin's motion was not accompanied by his affidavit or the affidavit of two other credible residents of Comal County. Nonetheless, we will address Medellin's substantive complaint in the interest of justice.

3

heavy burden to prove the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is doubtful." *DeBlanc v. State*, 799 S.W.2d 701, 704 (Tex. Crim. App. 1990).

We review the denial of a change of venue request for an abuse of discretion. *Gonzalez*, 222 S.W.3d at 449. We give great deference to the trial court, which is in the best position to resolve issues involving conflicts in testimony and to evaluate the credibility of the witnesses. *Id.* at 452. If the trial court does not make explicit findings of fact, as is the case here, we will assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex. Crim. App. 2006). As long as the trial court's ruling is within the zone of reasonable disagreement, the trial court does not abuse its discretion in denying the venue motion. *See Gonzalez*, 222 S.W.3d at 449.

Four witnesses testified at the hearing on Medellin's venue motion. Medellin called two witnesses, one of whom testified that she had already formed her opinion about Medellin's guilt from reading the articles in the local newspaper and the other of whom testified that Medellin would be unable to obtain a fair trial in Comal County because the news articles were not objective. The State called two witnesses, as well. The first witness was a Comal County Commissioner who testified that in all her contacts with constituents, she never heard anything about Medellin. The second witness was a citizen of the Comal County who testified that even though he remembered the initial publicity about the crime, he did not remember the names of the parties or crimes involved.

4

Medellin introduced and the trial court admitted four local newspaper articles published in the months following the crime. In those articles, the reporter described the beating incident and noted Medellin's criminal history. In each article, the district attorney was interviewed and stated that she believed Medellin was guilty of the offense. In two of the articles, Medellin's defense counsel was interviewed and stated that Medellin was entitled to a fair trial and should not be tried and convicted through media publicity. Finally, Medellin introduced and the trial court admitted documents purporting to show the circulation of the local newspaper; the trial court concluded that the document showed that of the 108,500 residents of Comal County, less than 5,000 subscribed to the newspaper.

The evidence before the trial court on the venue motion was conflicting. Although the newspaper articles arguably contained predispositions about Medellin's guilt—including information about his prior criminal history and the district attorney's statements that she believed Medellin was guilty—there was also an entire article dedicated to defense counsel's rebuttal; in it, defense counsel extensively discussed Medellin's right to a fair trial and admonished the newspaper for publishing articles seemingly presuming Medellin's guilt. Moreover, the testimony by Medellin's witnesses was directly contradicted by the testimony of the State's witnesses. The trial court acted within its discretion in crediting the State's witnesses and disbelieving Medellin's. *See id.*

In sum, we cannot conclude that Medellin carried his burden to prove that the media coverage of this crime was so pervasive and prejudicial that he could not obtain a fair trial in Comal County. *See id.*; *see also DeBlanc*, 799 S.W.2d at 704. There was

5

sufficient evidence from which the trial court could have reasonably come to the opposite conclusion. The mere existence of the media coverage, which is arguably all that Medellin proved, was not enough to support a change of venue. *See Gonzalez*, 222 S.W.3d at 449. The trial court did not abuse its discretion in denying Medellin's motion. Medellin's first issue is overruled.

## II. Sufficiency of the Evidence

By his second issue, Medellin argues that the evidence at trial was insufficient to prove that he caused the death of Espinoza.[5] Specifically, Medellin argues that:

> There were two doctors and two different and opposed opinions about the cause of death. The [S]tate's doctor was incompetent to testify on the record, as she had not even read the complete medical reports. The jury was not free to choose to believe the testimony of an incompetent witness.

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Johnson v. State*, 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original);

---

[5] By his third issue, Medellin asks the Court to perform a factual sufficiency analysis and conclude that the conflicting evidence regarding Espinoza's cause of death rendered it factually insufficient. But in 2010, in *Brooks v. State*, the Texas Court of Criminal Appeals merged factual and legal sufficiency reviews; we now perform only one review of the evidence based on the United States Supreme Court's *Jackson v. Virginia* case. *See Brooks*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson*, 443 U.S. 307, 319 (1979)). As an intermediate appellate court, we are bound by the precedent of our state's highest criminal court. *See Ervin v. State*, 331 S.W.3d 49, 53 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("As an intermediate court of appeals, we are bound to follow the precedent of the court of criminal appeals."); *see also* TEX. CONST. art. 5, § 5 (providing that the court of criminal appeals is final authority for criminal law in Texas); *Flores v. State*, No. 13-12-00606-CR, 2014 WL 1514129, at *2 (Tex. App.—Corpus Christi Apr. 17, 2014, pet. ref'd) (mem. op., not designated for publication) ("[W]e are bound to follow the decisions of the court of criminal appeals and have no authority to change the current standard of review."). We decline Medellin's invitation to perform an analysis abolished by the court of criminal appeals over four years ago. Medellin's third issue is overruled.

*see Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010). "The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile the conflicts in the evidence." *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (citing *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)).

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* Medellin committed the offense of murder, as charged in the indictment in this case, if he "intentionally or knowingly cause[d] the death" of Espinoza by striking her in the head and/or chest with his hands or fists. *See* TEX. PENAL CODE ANN. § 19.02(b)(1).

We have reviewed all of the evidence presented at Medellin's trial and believe there was ample evidence to prove the cause of death alleged in the indictment. It is undisputed that Medellin and Espinoza were engaged, lived together, and had a five-month-old baby. Espinoza suffered from severe scoliosis that caused her to develop a deformed chest and abdomen.

On the night of July 30, 2010, Medellin drove Espinoza to the emergency room because she was not breathing. The nurse who met them at their vehicle testified that,

7

on arrival, Espinoza did not have a pulse and was not breathing; she also testified that Espinoza had bruising on her face and hands and that "fresh blood" was flowing from Espinoza's nose. Espinoza was eventually resuscitated but remained in a coma. The doctor who treated Espinoza in the emergency room testified that Espinoza had "obvious trauma to the face, head, and chest, as well as the abdomen." He testified that Espinoza's pupils were "fixed" and "dilated," which meant a "high likelihood of brain injury." He testified that a CT scan showed air outside of Espinoza's lungs and stomach; he testified that "there are a lot of causes" for these conditions, "but in this case the most likely scenario was from trauma—blunt trauma."

There was further testimony that Medellin acted belligerently in the waiting room of the hospital. Police officers who arrived at the hospital to speak with Medellin testified that his knuckles appeared swollen. Medellin told the officers that he and Espinoza had been arguing earlier that day. Officers who were dispatched to Medellin and Espinoza's apartment testified that the apartment was in disarray; a lamp was overturned, and they recovered clumps of hair from the floor. Forensic investigators later discovered tissue attached to the hair, which indicated that the hair was pulled out and that it did not fall out naturally.

After being in a coma for nearly four months, Espinoza was removed from life support and died. The medical examiner who performed Espinoza's autopsy, Dr. Jennifer Rulon, testified that Espinoza's scoliosis caused her abdomen to be twisted, leaving her with a small right lung and normal-sized left lung. Rulon testified that Espinoza died " as the result of complications of anoxic encephalopathy," or brain damage

8

and lack of oxygen to the brain. Rulon testified that she examined Espinoza's medical records and the police reports and, from those, determined that Espinoza's condition was caused by an assault; thus, Rulon testified, Espinoza's "manner of death was determined to be a homicide."

Finally, a friend of Espinoza's testified that on the night before Espinoza was rushed to the hospital, she had visited Espinoza at her and Medellin's apartment. The friend testified that Espinoza "was very scared and afraid" that Medellin was going to "hurt her." Espinoza told her friend that, in the past, Medellin had "pulled her hair" and unplugged her oxygen tank. Espinoza told her friend that Medellin beat her after he had been drinking, and because Medellin and a friend were drinking that evening, Espinoza was scared he would hurt her afterward.

Medellin seems to argue that the evidence was insufficient because the testimony of the State's expert, Dr. Rulon, and his defense expert as to Espinoza's cause of death conflicted. But it is precisely the job of the jury to resolve conflicts in the evidence, and the jurors here were entitled to believe the State's expert over Medellin's. *See Wesbrook*, 29 S.W.3d at 111.

Medellin also argues that the jury was not entitled to consider the testimony of Dr. Rulon because she was incompetent. However, the record in this case shows that Medellin made no objections to the testimony of the State's expert regarding Espinoza's cause of death, so the competence of the expert was not an issue brought to the jury's attention. Regardless, we consider all the evidence in the record in our sufficiency review, whether or not properly admitted. *See Powell v. State*, 194 S.W.3d 503, 507

9

(Tex. Crim. App. 2006) ("[A] reviewing court is permitted to consider all evidence in the trial court record, whether admissible or inadmissible, when making a legal-sufficiency determination."); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001) ("When conducting a sufficiency review, we consider all the evidence admitted, whether proper or improper."). So it is irrelevant whether the testimony of the State's expert was incompetent and therefore inadmissible.

Rather, from the evidence outlined above, a rational jury could have concluded that Medellin beat Espinoza on her chest and head with his hands: when she arrived at the hospital, Espinoza had bruising on her chest, abdomen, face, and head; Medellin admitted that he and Espinoza had been arguing and was observed to have swollen knuckles; Dr. Rulon testified that the injuries that led to Espinoza's death, her brain damage and lack of oxygen to her brain, were caused by an assault; and there was evidence that, the night before Espinoza was taken to the hospital with her injuries, she had feared that Medellin might beat her.

Having viewed the evidence in the light most favorable to the verdict, we conclude that from the evidence outlined above, the jury in this case could have rationally found, beyond a reasonable doubt, that Medellin caused Espinoza's death by striking her head and/or chest with his hands or fists. *See Johnson*, 364 S.W.3d at 293–94. We overrule Medellin's second issue.

### III. Jury Charge

By his fourth issue, Medellin argues that the jury charge contained an erroneous instruction regarding the statute of limitations for aggravated assault causing serious

bodily injury to a family member. Medellin argues that the instruction stated that there was no statute of limitations when, in fact, there is a two-year statute of limitations for that offense.[6] Medellin argues that the offense of aggravated assault was committed more than two years before the indictment in this case. Medellin argues that this instruction caused him egregious harm.[7]

We note at the outset that Medellin's argument is inadequately briefed. He provides no law on charge error and no analysis as to why the error, if any, caused him egregious harm. *See* TEX. R. APP. P. 38.1(i).

But even if the issue was adequately briefed, it lacks merit. First, contrary to Medellin's assertion, the instruction in the charge regarding limitations states, "The statute of limitations for the offense of Aggravated Assault with a Deadly Weapon Causing Serious Bodily Injury to a Member of the Household is two (2) years." We believe it is a misstatement of the record to assert that the trial court entirely failed to inform the jury of the applicable statute of limitations.

Medellin may be referring to the next sentence in the limitations instruction, which reads as follows: "Therefore, proof that the offense of Murder and Aggravated Assault

---

[6] The State notes that the correct statute of limitations for aggravated assault is an unsettled issue. *See State v. Bennett*, 415 S.W.3d 867, 869 (Tex. Crim. App. 2013) But as discussed later in this section, even assuming that the correct statute of limitations is two years, we still find no error in the charge.

[7] Because no objection was lodged as to the limitations instruction in the charge, Medellin correctly states that he must show that the erroneous instruction caused him egregious harm. *See Gillette v. State*, 444 S.W.3d 713, 727 (Tex. App.—Corpus Christi 2014, no pet.) (op. on reh'g) ("[W]here the error is urged for the first time on appeal, a reviewing court will search for 'egregious harm.'") (citing *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998) (quoting *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994))).

11

with a Deadly Weapon Causing Serious Bodily Injury to a Member of the Household, if any, occurred prior to the filing of the indictment on April 13, 2011 is sufficient." To the extent that this sentence implies that there is no statute of limitations for aggravated assault, we still find no harm. *See Gillette v. State*, 444 S.W.3d 713, 730–31 (Tex. App.—Corpus Christi 2014, no pet.) (citing *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008)) (other citations omitted) ("Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory."). Even if the charge clearly instructed the jury that the applicable statute of limitations is two years, Medellin would have gained no valuable right or defensive theory. The indictment alleged that the aggravated assault offense was committed on July 30, 2010. The indictment in this case was filed on April 13, 2011. In other words, the indictment was filed less than a year after the alleged offense, which was well-within the two-year statute of limitations. A corrected charge would have provided Medellin with no benefit. We overrule his fourth issue.

## IV. Comments on Silence

By his fifth issue, Medellin argues that the prosecutor's "repeated comments" on Medellin's failure to testify deprived him of a fair trial. We note first that Medellin provides no record cites to guide the Court to these "repeated" comments within the six-volume trial record.[8] *See* TEX. R. APP. P. 38.1(i). Regardless, in his brief, Medellin concedes that defense counsel lodged no objections to these comments. He therefore failed to

---

[8] Medellin does refer this Court to the following sentence from the prosecutor's closing argument: "Therefore, proof that the offense of murder or aggravated assault with a deadly weapon, causing serious bodily injury to a member of the household, if any, occurred prior to the filing of the indictment on April 13th, 2011, is sufficient." We disagree that this is a comment on Medellin's failure to testify.

12

preserve this complaint for our review. *See* TEX. R. APP. P. 33.1(a); *Brewer v. State*, 367 S.W.3d 251, 253 (Tex. Crim. App. 2012). We overrule Medellin's fifth issue.

## V. Admission of Testimony

### A. Expert Testimony

By his sixth issue, Medellin argues that the trial court erred in allowing the emergency room physician who treated Espinoza to testify that Medellin's hands were a deadly weapon. By his seventh issue, he argues that the trial court erred in allowing the medical examiner who performed Espinoza's autopsy to testify that Espinoza's death was a homicide. Medellin argues that this testimony involved legal conclusions beyond the doctors' expertise. But Medellin made no objections to the foregoing testimony. He therefore failed to preserve these complaints for our review. *See* TEX. R. APP. P. 33.1(a); *Reyna v. State*, 168 S.W.3d 173, 177–79 (Tex. Crim. App. 2005). We overrule his sixth and seventh issues.

### B. Police Officer

By his tenth issue, Medellin argues that "the admission of testimony of officers that the deceased's wounds were defensive" deprived Medellin of a fair trial. Again, we note that Medellin provides no record cites to guide the Court to the complained-of "testimony of officers" within the six-volume trial record. *See* TEX. R. APP. P. 38.1(i). But in our review of the record, we found that two New Braunfels Police Department officers testified that, based on their experience with assault cases, they believed the bruises on Espinoza's hands were defensive wounds. Medellin made no objections to this testimony. He therefore failed to preserve this complaint for our review. *See* TEX. R.

13

APP. P. 33.1(a); *Reyna*, 168 S.W.3d at 177–79.   We overrule Medellin's tenth issue.

## VII.   Improper Argument

### A.   Argument on the Jury Charge

By his eighth issue, Medellin argues that the prosecutor made an improper comment during her closing argument when she suggested to the jurors that they could use Medellin's prior convictions in their deliberations on his guilt in this case.   Medellin did not object to this comment, so failed to preserve this complaint for our review.   *See* TEX. R. APP. P. 33.1(a); *Mays v. State*, 318 S.W.3d 368, 394 (Tex. Crim. App. 2010) ("[W]e will not review the propriety of the prosecutor's arguments, [where] appellant failed to object to those arguments at trial.").   We overrule his eighth issue.

### B.   Comments About Domestic Violence

By his ninth issue, Medellin argues that the prosecutor made an improper comment during closing argument when she suggested that the defense's evidence attempting to attribute Espinoza's injuries to her underlying health problems "sound[ed] like a lot of excuses we hear in domestic violence cases."   Again, Medellin did not object to this comment, so failed to preserve this complaint for our review.   *See* TEX. R. APP. P. 33.1(a); *Mays*, 318 S.W.3d at 394.   We overrule his ninth issue.

## VIII.   Prior Offenses During Punishment

In five issues, Medellin complains of the trial court's admission and consideration, during the punishment stage of Medellin's trial, of evidence related to the prior convictions alleged by the State in the indictment to enhance Medellin's punishment.

### A.   Admission of Evidence

14

### 1. Gang Involvement

By his eleventh issue, Medellin argues that the trial court deprived him of a fair trial by admitting testimony from Detective Jason Cline of the Comal County Metro Narcotics Task Force that identified Medellin as a gang member. Medellin argues that this testimony "deprived [him] of an individualized punishment because he was made responsible for the criminal acts of others." Medellin lodged no objections during the entirety of Detective Cline's testimony. He therefore failed to preserve this complaint for our review. *See* TEX. R. APP. P. 33.1(a); *McFarland v. State*, 928 S.W.2d 482, 511–12 (Tex. Crim. App. 1996), *overruled on other grounds*, *Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998) (holding that a defendant failed to preserve error concerning the admission of evidence during the punishment phase of trial where the defendant did not object). We overrule Medellin's eleventh issue.

### 2. Fingerprint Expert

By his twelfth issue, Medellin argues that the trial court erred in admitting State's exhibit 75, which included a fingerprint card connecting him to the alleged prior conviction for burglary of a non-habitation. Medellin argues that the testimony of the State's witness as to the fingerprint card failed to show that the fingerprints on the card were Medellin's. Therefore, Medellin argues, the exhibit was inadmissible to show Medellin as the perpetrator of the prior burglary offense. Medellin provides no legal authority or substantive argument in support of this issue. We therefore conclude that this issue has been inadequately briefed, and Medellin has waived our review. *See* TEX. R. APP. P.

15

38.1(i).  Medellin's twelfth issue is overruled.[9]

## B.  Misclassified Offense

By his thirteenth issue, Medellin appears to argue that the trial court erred in allowing his punishment range to be enhanced to habitual-offender status, *see* TEX. PENAL CODE ANN. § 12.42(d) (West, Westlaw through 2013 3d C.S.), because the classification of the second alleged prior conviction, burglary of a non-habitation committed on April 7, 1990, was reduced by the Legislature in 1994 from a second-degree felony to a state jail felony.  *See id.* ("A previous conviction for a state jail felony . . . may not be used for enhancement purposes under [the habitual-offender] subsection.").  In our review of the record, we have found no objection by Medellin on these grounds to either the jury charge, which allowed the jury to assess a punishment in the habitual-offender range, or the judgment, which imposed the habitual-offender sentence.  As such, Medellin failed to preserve this issue for our review.  *See* TEX. R. APP. P. 33.1(a).

And even if Medellin had preserved this issue, a prior felony conviction may be used to enhance punishment for a subsequent offense, even if the prior conviction has since been reclassified as a misdemeanor.  *See Alvarado v. State*, 596 S.W.2d 904, 906 (Tex. Crim. App. [Panel Op.] 1980); *Boren v. State*, 182 S.W.3d 422, 423 (Tex. App.—Fort Worth 2005, pet. ref'd).  The trial court therefore did not err in allowing Medellin's punishment to be enhanced under the habitual-offender statute.  We overrule Medellin's thirteenth issue.

---

[9] Medellin's fourteenth issue appears to be a restatement of his eleventh and twelfth issues, on which we have already ruled above.  We decline to address these issues a second time so do not reach his fourteenth issue.  *See* TEX. R. APP. P. 47.1.

16

## C.  Submission of Priors to Jury

By his fifteenth issue, Medellin argues that the trial court erred in failing to submit, at punishment, a question to the jury on his prior convictions.   Generally citing *McGee v. State* as support, Medellin argues that even though he pleaded true to the prior convictions, the State was nonetheless required to provide evidence supporting the pleas of true and failed to do so in this case.   *See* 725 S.W.2d 362 (Tex. App.—Houston [14th Dist.] 1987, no pet.).   *McGee* stands for no such proposition.

*McGee* involved the guilt-innocence stage of the defendant's trial, not the punishment stage.   *Id.* at 364.   In *McGee*, the State attempted to use an extraneous offense to prove the defendant's intent to commit the charged offense and his identity as the perpetrator of the charged offense.   *Id.* at 364–65.   The trial court admitted the evidence of the extraneous offense, and the defendant complained on appeal that the evidence was prejudicial because the evidence did not show intent or identity and the State failed to prove the defendant was the perpetrator in the extraneous offense.   *Id.* at 364–66.   In short, the facts and law involved in *McGee* are completely inapposite to Medellin's fifteenth issue.

Rather, we are guided by the well-established law that, at the punishment stage, a defendant's pleas of true to prior convictions is sufficient evidence to support the underlying enhancement allegations.   *See Wilson v. State*, 671 S.W.2d 524, 526 (Tex. Crim. App. 1984); *Harvey v. State*, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981); *Torres v. State*, 391 S.W.3d 179, 184 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) ("Once a defendant pleads true to the enhancement allegations, the State is relieved of its burden

17

to prove the allegations because a plea of true constitutes evidence and sufficient proof to support the enhancement allegation." (citations and internal quotations omitted)). Medellin pleaded true to both alleged prior convictions. He cannot now complain on appeal that the evidence was insufficient because the issue was resolved by his pleas. *See Harvey*, 611 S.W.2d at 111. The trial court committed no error in declining to submit the issue of Medellin's prior convictions to the jury. We overrule Medellin's fifteenth issue.

## IX. Ineffective Assistance of Counsel

By his sixteenth issue, Medellin argues that defense counsel was ineffective because he failed to object to the "critically prejudicial" testimony about Medellin's gang affiliation that was elicited by the State at Medellin's punishment hearing. We disagree— Medellin cannot show that he was prejudiced by counsel's failure to object because, ultimately, the complained-of testimony was admissible.

We apply the same two-prong *Strickland* standard of review for ineffective assistance of counsel claims in both the guilt/innocence phase of trial and the punishment phase of trial. *Hernandez v. State*, 988 S.W.2d 770, 772–74 (Tex. Crim. App. 1999). First, the appellant must demonstrate counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, the appellant must establish counsel's performance was so prejudicial, it deprived appellant of a fair trial. *Id.* at 691. To satisfy this prong, appellant must show that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

18

The procedures to be followed at the punishment stage of trial and the evidence that may be considered in determining punishment are the subject of article 37.07 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 (West, Westlaw through 2013 3d C.S.). This statute authorizes the admission of evidence in the punishment phase of trial as to any matter the court deems relevant to sentencing, "including but not limited to the prior criminal record of the defendant, his general reputation, his character, [and] an opinion regarding his character . . . ." *Id.* art. 37.07 § 3(a)(1). Evidence concerning a defendant's gang membership is relevant character evidence at the punishment stage so long as the evidence informs the jury of "the types of activities the gang generally engages in so that they can determine if his gang membership is a positive or negative aspect of his character." *Beasley v. State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); *see Jessop v. State*, 368 S.W.3d 653, 692 (Tex. App.—Austin 2012, no pet.) ("The court of criminal appeals has recognized that when the defendant is charged with an act of violence, membership in [a gang] with a reputation for violent activities is relevant evidence because it relates to his character.") (citation omitted).

Here, Detective Cline testified that from his conversations with Medellin about his time in prison and his examination of Medellin's various tattoos, he believed that Medellin was a member of the Orejones gang, a subset of the Tango Blast gang, which operates both inside and outside of Texas prisons and jails. Detective Cline testified that the Orejones gang is primarily known for narcotics trafficking. Detective Cline also testified that the Orejones gang has been involved in numerous violent confrontations with rival

19

gangs. This testimony was admissible at Medellin's punishment hearing because it included specific information about the activities of the gang with which Medellin was affiliated and gave the jury a means by which to assess Medellin's character. *See Beasley*, 902 S.W.2d at 456. Thus, even if defense counsel would have objected to the gang evidence, the trial court would have properly overruled the objection. Medellin therefore cannot show that but for defense counsel's error, if any, the result of his punishment hearing would have been different. We overrule Medellin's sixteenth issue.

## X. Cumulative Error

By his seventeenth issue, Medellin complains that cumulative error deprived him of a fair trial. But Medellin provides no applicable authority and no argument in support of this issue. We therefore conclude that this issue has been inadequately briefed, and Medellin has waived our review. *See* TEX. R. APP. P. 38.1(i). Medellin's seventeenth issue is overruled.

## XI. Conclusion

We affirm the judgments of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
2nd day of April, 2015.

20

**CHIEF JUSTICE**
  ROGELIO VALDEZ

**JUSTICES**
  NELDA V. RODRIGUEZ
  DORI CONTRERAS GARZA
  GINA M. BENAVIDES
  GREGORY T. PERKES
  NORA L. LONGORIA

**CLERK**
  DORIAN E. RAMIREZ



# Court of Appeals

## Thirteenth District of Texas

NUECES COUNTY COURTHOUSE
901 LEOPARD, 10TH FLOOR
CORPUS CHRISTI, TEXAS 78401
361-888-0416 (TEL)
361-888-0794 (FAX)

HIDALGO COUNTY
ADMINISTRATION BLDG.
100 E. CANO, 5TH FLOOR
EDINBURG, TEXAS 78539
956-318-2405 (TEL)
956-318-2403 (FAX)

*www.txcourts.gov/13thcoa*

May 14, 2015

Hon. Sammy M. McCrary
Chief Felony Prosecutor
150 N. Seguin Ave, Suite 307
New Braunfels, TX 78130
* DELIVERED VIA E-MAIL *

Hon. Larry Warner
Attorney at Law
3109 Banyan Circle
Harlingen, TX 78550
* DELIVERED VIA E-MAIL *

Hon. Jennifer Tharp
District Attorney
150 N. Seguin, Ste 307
New Braunfels, TX 78130
* DELIVERED VIA E-MAIL *

Hon. Laura Burton Bates
Assistant Criminal District Attorney
150 N. Seguin Ave., Ste. 307
Spring Branch, TX 78070
* DELIVERED VIA E-MAIL *

Re:      Cause No. 13-13-00190-CR
Tr.Ct.No. CR-2011-196
Style:    ALBERT RODRIGUEZ MEDELLIN v. THE STATE OF TEXAS

Appellant's motion for extension of time to file motion for rehearing and appellant's motion for extension of time to file motion for rehearing en banc reconsideration in the above cause were this day GRANTED by this Court. The motion for rehearing and motion for rehearing en banc reconsideration have been marked "filed" as of May 4, 2015, their date of receipt.

In addition, appellant's motion for rehearing and appellant's motion for rehearing en banc reconsideration were this day DENIED by this Court.

Very truly yours,

Dorian E. Ramirez, Clerk

DER:dot